## NIGRO v. UNITED STATES.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 600. Argued January 11, 12, 1928.—Decided April 9, 1928.

1. In § 2 of the Anti-Narcotic Act, as amended, which provides that it shall be unlawful for " any person " to sell, etc., any of the drugs specified in the first section except in pursuance of a written order of the person to whom the article is sold, etc., on a form issued by the Commissioner of Internal Revenue, the words " any person " include all persons and not merely those who by § 1 are required to register and pay the tax. P. 340.
2. So construed, the provision is constitutional. P. 351.
3. The Act, as amended February 24, 1919, is a genuine taxing act. P. 352.
4. The provision in question, being reasonably adapted to enforcement of the tax, is not an undue invasion of the police power of the States; and an incidental motive to discourage harmful uses of the drugs taxed would not make it so. P. 353.

RESPONSE to questions certified by the Circuit Court of Appeals relative to the conviction of Nigro for selling morphine without a written order from the purchaser on an official form.

*Mr. Wm. G. Lynch,* with whom *Mr. Harvey Roney* was on the brief, for Nigro.

Congress intended that those persons who came within the classes named and defined should be required to register and pay the special tax, and none other.

If this construction be correct, then, if § 2 be construed as including all persons in the United States, it is unconstitutional under the doctrine laid down in *United States* v. *Jin Fuey Moy,* 241 U. S. 394. That case and this are parallel, at least insofar as the principle is concerned, that the Harrison Narcotic Act is a revenue measure and can only be applied to those who are required to register and pay the special tax. It is only from those persons that the Government can derive any revenue by means of registration, and the only constitutional authority which Congress has is to enact such a law for revenue. *Wong Sing* v. *United States,* 260 U. S. 18.

The statute, as said in the *Jin Fuey Moy* case, does not purport to be in execution of any treaty. If it did, then, as this Court there remarked, another grave question would arise. *Doremus* v. *United States,* 249 U. S. 86.

The *Doremus* case arose under the original Act and is not applicable to the first section of that Act as amended by the Act of February 24, 1919. Under the amended Act only certain persons are allowed or required to register, and only such persons are penalized for doing any of the things in relation to the drugs which would require them to register, and if § 2 is construed to apply to all persons, then it goes beyond § 1 as amended, and it cannot assist in the collection of the revenue. The provision in § 2, that the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall cause suitable forms to be prepared, &c., and the provision that no collector shall sell any such forms to any person other

than a person who has registered and paid the special tax as required by § 1, and the provision that it shall be unlawful for any person to obtain by means of said order forms any of the aforesaid drugs for any purpose other than the use, sale or distribution thereof by him in the conduct of a lawful business, and the provision that no sales can be made except upon order forms, or upon a physican's prescriptions, or to certain governments purchasing them for the health service, army, navy, etc., show plainly that the purpose of Congress in enacting § 2 was to confine the drugs to their use as medicine. When the restrictions and conditions Congress attached to the sale and distribution of the drugs under § 2 are carefully considered, it is clearly seen that Congress had in mind the stamping out of drug addiction, and thereby to subserve the health and general welfare of the people of the United States. If § 2 covers all persons within the United States, then it was not merely incident to the raising and protection of the revenue, because all persons within the United States were not required to pay it; and unless it is restricted to those who are required to pay it, then, as to all other persons, it is necessarily unconstitutional and void.

If Congress by § 2 intended only to aid the collection of the revenue, why would it not permit persons who had not registered to procure order forms and purchase the drugs upon them, or upon a physician's prescription? By limiting and conditioning the sale of the drugs as it did, and limiting the use of the drugs to medicine, it is manifest that the moral rather than the revenue end was in view.

The public health and morals are subjects reserved to the several States and to the people, as provided by the Tenth Amendment. *United States* v. *Daugherty,* 269 U. S. 360; *Hammer* v. *Dagenhart,* 247 U. S. 251; *Child*

*Labor Tax Case,* 259 U. S. 20; *Hill* v. *Wallace,* 259 U. S. 44; *Linder* v. *United States,* 268 U. S. 5; *United States* v. *One Ford Coupe,* 272 U. S. 321, 350.

*Solicitor General Mitchell,* with whom *Messrs. O. R. Luhring,* Assistant Attorney General, and *Harry S. Ridgely,* Attorney in the Department of Justice, were on the brief, for the United States.

The prohibition contained in § 2 of the Narcotic Act against selling, bartering, exchanging, or giving away drugs, except in pursuance of an order form, is not limited to persons required to register, but applies to " any person."

As the Act was originally enacted in 1914, it contained no stamp tax provision. The only taxes prescribed were the occupation taxes on importers and dealers. It required every person selling or dealing in the drug, without regard to any stamp tax or stamped package, to register and pay the occupation tax, and the words " any person " in the first sentence of § 2 as originally enacted clearly provided that every person selling the drug should exact the order form from the purchaser without regard to whether or not the vendor was in fact registered. The stamp tax provisions of § 1 were added by the Revenue Act of 1918, and the registration and occupation tax provisions in § 1 were then amended so as to provide that only those who deal at wholesale or retail in or from original stamped packages are required to register and pay the dealer's occupation tax. For the first time there were created two classes of dealers—those who sell in or from stamped packages and are required to register and pay the occupation tax, and those who sell only in or from unstamped packages, every sale by whom is a violation of the stamp-tax provisions, and who are not required to register.

No change was made in § 2, and there is no reason to believe that Congress intended that a restricted meaning should be given to it as a result of the amendments to § 1.

. Prior to the amendment of 1918, the words " any person " in § 2 had been literally construed to apply to sales by any person whether registered or not. *Fyke* v. *United States,* 254 Fed. 225. Section 2 had been so generally applied in other cases. When overhauling the Harrison Act by the amendments of 1918, Congress made no change in § 2. It should be presumed to have acquiesced in the construction which had been placed upon it. *Coleman* v. *United States,* 3 F. (2d) 243; *United States* v. *Jin Fuey Moy,* 241 U. S. 394.

The purpose of the order-form provisions of the Act was to keep the traffic aboveboard and enable the United States to observe all transactions in drugs. Looked at as an aid to enforcement of the two tax provisions of the statute, one imposing an occupation tax and the other a stamp tax, the purpose of the Act is defeated if a purchaser of drugs from an unregistered dealer is not required to furnish the prescribed order form.

Making it incumbent on the vendor, whether registered or not, to exact a written order on the prescribed form from the purchaser serves the purpose of the statute in enabling public authorities to observe the disposition of the drug by the purchaser and to enforce the registration, occupation tax, and stamp-tax provisions.

If Congress has power to require vendors to decline to sell to anyone not producing a written order on a prescribed form, it has power to require those not registered, as well as those registered, to follow this practice.

Section 2, broadly construed, is not unconstitutional.

The provisions imposing stamp taxes are valid. *Alston* v. *United States,* 274 U. S. 289. Those involving occupa-

tion taxes are valid, and the provisions making it unlaw-
ful to purchase or sell unstamped drugs or to deal in
stamped drugs without registering or paying the occupa-
tion tax are clearly valid.  The order form provisions of
§ 2 were sustained in *United States* v. *Doremus,* 249 U. S.
86.  *United States* v. *Balint,* 258 U. S. 250.

The *Doremus* case dealt with the statute as originally
enacted and sustained it as a revenue measure, although
the only tax imposed by it was an annual occupation tax
on purchasers, importers, and dealers of $1 each, and the
revenues derived were obviously nominal, and the Act
was attacked as not a genuine revenue measure.  By the
amendments of 1918, this weakness of the Act was re-
paired.  The occupation taxes were made substantial, and,
in addition, the stamp tax on the drugs at the rate of
one cent an ounce or any fraction thereof was added.
These tax provisions produce substantial revenue, and the
Act, as a whole, can be sustained as a genuine tax measure.

MR. CHIEF JUSTICE TAFT delivered the opinion of the
Court.

This case comes here by certificate of the Circuit Court
of Appeals of the Eighth Circuit, and is intended to
submit to us, for answer, certain questions concerning
the validity and proper construction of the Anti-Narcotic
Act of December 17, 1914, c. 1, 38 Stat. 785, as amended
in the Revenue Act of 1918, February 24, 1919, § 1006,
c. 18, 40 Stat. 1057, 1130.

The Circuit Court of Appeals bases its questions on
issues arising in its consideration on error of a judgment
of conviction on the second count of an indictment drawn
under § 2 of the Act.  The count charged that one Frank
Nigro and one Roy Williams unlawfully sold to one A. L.
Raithel one ounce of morphine, not being sold in pur-
suance of a written order of A. L. Raithel on a form

318°—28——22

issued in blank for that purpose by the Commissioner of Internal Revenue. Roy Williams was not apprehended. Frank Nigro was tried and convicted, and sentence was imposed of five years' imprisonment at the Leavenworth penitentiary. The Circuit Court of Appeals expressed the opinion that the case could not be disposed of without determining the construction and possibly the constitutionality of the first provision of § 2 of the Act, reading as follows:

"That it shall be unlawful for any person to sell, barter, exchange, or give away any of the aforesaid drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue."

A summing up of the evidence, tending to show the sale of an ounce of morphine by the defendants as charged in the second count, is contained in the certificate by the court.

The questions submitted for our consideration are as follows:

### QUESTION I.

Is the provision which is contained in the first sentence of section 2 of the Act limited in its application to those persons who by section 1 are required to register and pay the tax?

### QUESTION II.

If a broader construction is given to said provision, is the provision as so construed, constitutional?

If question I is answered in the affirmative, then we ask,

### QUESTION III.

Is it necessary for the Government in prosecuting under said provision, to allege and prove that defendant was a person required by section I to register and pay the tax?

If question III is answered in the affirmative, then we ask,

## QUESTION IV.

Is the allegation that defendant made the sale not in pursuance of a written order of the buyer on a form issued in blank for that purpose by the Commissioner of Internal Revenue of the United States, sufficient to charge that defendant was a person required to be registered and to pay the tax under section I?

The second question was invoked by what we said in *United States* v. *Daugherty,* 269 U. S. 360, 362, as follows:

"The constitutionality of the Anti-Narcotic Act, touching which this Court so sharply divided in *United States* v. *Doremus,* 249 U. S. 86, was not raised below and has not been again considered. The doctrine approved in *Hammer* v. *Dagenhart,* 247 U. S. 251; *Child Labor Tax Case,* 259 U. S. 20; *Hill* v. *Wallace,* 259 U. S. 44, 67; and *Linder* v. *United States,* 268 U. S. 5, may necessitate a review of that question if hereafter properly presented."

In *Alston* v. *United States,* 274 U. S. 289, 294, the question of the constitutionality of the Act was sought to be presented, but the case only involved the validity of § 1 as amended in the Revenue Act of 1918. We held that section valid because it imposed a stamp tax on certain narcotic drugs, making it unlawful to purchase or sell them except in or from original stamped packages, which was plainly within the taxing power of Congress and had no necessary connection with any other requirement of the Act which might subject it to reasonable question. We said that § 1 did not absolutely prohibit buying or selling; that it produced a substantial revenue and contained nothing to indicate that by colorable use of taxation Congress was attempting to invade the reserved powers of the States.

The present case relates to the validity of the second section of the law; but, before considering this, we must answer the first question and construe the meaning of the first sentence of § 2 quoted above. The controversy is whether the words " any person " in that sentence include all persons or apply only to persons who are required to register and pay the tax under the first section of the act.

We have put in the margin * a synopsis of the original § 1 of the Act of 1914, and of the same section as amended

---

* The original first section required every person who produced, sold, or gave away opium or coca leaves or any preparation thereof, to register with the proper internal revenue collector his name and place of business and to pay a special tax of a dollar a year, provided that no employee of° such person need either register or pay, nor were officers of the General Government or of state or county or municipal governments lawfully engaged in purchasing the drugs for hospitals or prisons required to do so.

It was also provided that: " It shall be unlawful for any person required to register under the terms of this Act to produce, import, manufacture, compound, deal in, dispense, sell, distribute, or give away any of the aforesaid drugs without having registered and ·paid the special tax provided for in this section." The section provided that the word " person " used in the Act should be construed to mean and include a partnership, association or corporation as well as a natural person.

By the Revenue Act of 1918, this first part of section one is made to read as follows: " That on or before July 1 of each year every person who imports, manufactures, produces, compounds, sells, deals in, dispenses, or gives away opium or coca leaves, or any compound, manufacture, salt, derivative, or preparation thereof, shall register with the collector of internal revenue of the district, his name or style, place of business and place or places where such business is to be carried on, and pay the special taxes hereinafter provided." A special tax is then imposed on importers, manufacturers, producers or compounders of the drugs of $24.00 per. annum, on wholesale dealers, $12.00, on retail dealers, $6.00, and on physicians entitled to administer the drugs in their professional practice, $3.00. Employees of all lawfully registered persons are exempted from tax. It is then provided that: " It shall be unlawful for any person required to reg-

in the Revenue Act of 1918, and of some other sections now in force, including § 2.

In interpreting the Act, we must assume that it is a taxing measure, for otherwise it would be no law at all. If it is a mere act for the purpose of regulating and restraining the purchase of the opiate and other drugs, it is beyond the power of Congress and must be regarded as invalid, just as the Child Labor Act of Congress was held to be, in *Bailey, Collector,* v. *Drexel Furniture Company,* 259 U. S. 20. Everything in the construction of § 2 must

---

ister under the provisions of this Act to import, manufacture, produce, compound, sell, deal in, dispense, distribute, administer, or give away any of the aforesaid drugs without having registered and paid the special tax as imposed by this section." Then an excise revenue tax of one cent per ounce on the drug is imposed through stamps to be affixed to the bottle or other container. It is made unlawful to sell or dispense the drugs except in or from the original stamped package and possession of the drug by any person is made prima facie evidence of violation of the section. Possession of an original stamped package containing the drug is made prima facie evidence of liability to pay the tax. These presumptions are not to apply to a person obtaining the drug from a registered dealer in pursuance of a prescription written for legitimate medical uses issued by a physician or other registered practitioner and where the bottle or other container in which the drug is put up by the dealer bears the druggist's name, his serial and registry number, the number, name and address of the patient, as well as those of the writer of the prescription. The presumptions are not to apply to the dispensing of the drug to a patient by a registered physician, or practitioner in the course of his professional practice for legitimate medical purposes where a record is kept. All the provisions of existing law relating to the engraving, sale and cancellation of tax-paid stamps provided for in the internal revenue laws are made to apply to the stamps issued under the section. Unstamped packages found in possession of any person except as provided in the section are subject to seizure. Importers, manufacturers and wholesale dealers are to keep books and records and render monthly returns in relation to dealing with such drugs as are required by regulation made by the Commissioner and approved by the Secretary of the Treasury.

be regarded as directed toward the collection of the taxes imposed in § 1 and the prevention of evasion by persons subject to the tax.    If the words can not be read as reasonably serving such a purpose, § 2 can not be supported.

Section 2 of the Act of 1914 was not changed by the Revenue Act of 1918.   This section provides: " That it shall be unlawful for any person to sell, barter, exchange, or give away any of the aforesaid drugs except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue.   Every person who shall accept any such order, and in pursuance thereof, shall sell, barter, exchange, or give away any of the aforesaid drugs, shall preserve such order for a period of two years in such a way as to be readily accessible to inspection by any officer, agent, or employee of the Treasury Department duly authorized for that purpose, and the State, Territorial, District, municipal, and insular officials named in section five of this Act.   Every person who shall give an order as herein provided to any other person for any of the aforesaid drugs shall, at or before the time of giving such order, make or cause to be made a duplicate thereof on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue, and in case of the acceptance of such order, shall preserve such duplicate for said period of two years in such a way as to be readily accessible to inspection by the officers, agents, employees, and officials hereinbefore mentioned."   But § 2 is not to apply,

1. to dispensing by a registered physician in the course of his professional practice only, if he keep a record of all his dispensing except what he dispenses in personal attendance upon a patient; or

2. to dispensing of the drug to a consumer by a registered dealer on written prescription of a registered physican if dated on the day it is signed, the dealer to keep record of such prescriptions for inspection; or

3. to sale, exportation, shipment, or delivery of the drug by any person within the country for ·exportation under regulations; or

4. to sale or giving away any of the drug to any officer of the National Government or State, county or municipality lawfully engaged in making purchases for hospitals or prisons.

The Commissioner of Internal Revenue with the approval of the Secretary of the Treasury is to cause suitable forms to be prepared for the purposes mentioned, to be distributed to the collectors of

The importation, preparation and sale of the opiate, or other like drugs, and their transportation and concealment in small packages, are exceedingly easy and make the levy and collection of a tax thereon correspondingly

internal revenue for sale by them, to persons who have registered and paid the special tax, and no collector is to sell any forms except to such persons. The price of these forms is to be fixed by the Commissioner of Internal Revenue as approved by the Secretary of the Treasury, but is not to exceed one dollar per hundred. When a collector shall sell forms, he is to cause the name of the purchaser to be plainly written or stamped on them before sale and delivery, and no person other than such purchaser shall use the forms so stamped to procure delivery or shipment of any such drug. It is made unlawful to obtain by means of such forms any such drug for use, sale or distribution of it, except in the conduct of a lawful business in the drug or in the legitimate practice of a medical profession.

The third section provides for returns and records to be made by registered persons.

The fourth section makes it unlawful for any non-registered person who has not paid the tax to send, ship, or deliver to any person in another State, except common carriers and employees of registered persons.

Section 5 provides for official inspection of orders, prescriptions, etc., and forbids a disclosure of information except for the enforcement of the Act.

Section 6 of the original Act was amended by the Revenue Act of 1918 and relates to minimum limitations upon strength of opium and other drugs to come within statute, but dealers in preparations that are less than minimum are to keep a record of the sale of such for inspection.

By section 7, internal revenue laws as to assessment, collection, remission and refund of internal revenue taxes are made applicable to taxes under the Act so far as not inconsistent.

By section 8, it is made unlawful " for any person not registered " under the Act, and who has not paid the special tax, to have in his possession or under his control such drugs, and his thus having them shall be presumptive evidence of a violation of this section, with the usual exemptions of employees of registered persons, and of government officers having such possession for their official duties. The section directs that the exemptions need not be negatived in an informa-

difficult. More than this, use of the drug for other than medicinal purposes leads to addiction and causes the addicts to resort to so much cunning, deceit and concealment in the procurement and custody of the drug, and to be willing to pay such high prices for it that, to be efficient, a law for taxing it needs to make thorough provision for preventing and discovering evasion of the tax—as by requiring that sales, purchases and other transactions in the drug be so conducted and evidenced that any dealing in it where the tax has not been paid, may be detected and punished and that opportunity for successful evasion may be lessened as far as may be possible.

The literal meaning of " any person," in the first line of the first sentence of § 2, includes all persons within the jurisdiction. The word " persons " is given expressly the meaning of a partnership, association or corporation, as well as that of a natural person. Why should it not be given its ordinary comprehensive significance? The argument to the contrary in favor of limiting it to exclude all but those who are required to register and pay the tax is that it would be superfluous to include persons selling opium who are not registered, because they are denounced as criminals by the first section for selling without registration. That is no reason why they may not be included under a second reasonable restriction enforceable by punishment. Of course such a restriction should be fairly adapted to obstruct the successful accomplishment of the main crime, or furnish means of detecting the guilty per-

tion or indictment and that the burden of proof is to be upon persons claiming exemption.

Section 9 subjects any one violating or failing to comply with the requirements of the Act to a fine of not more than $2,000 or imprisonment not more than five years or both.

Section 10 authorizes appointment of agents and others necessary to enforce provisions of the Act and

Section 11 makes appropriation for carrying out the Act.

son, and not be a fruitless, useless inhibition only resulting in what is in effect a duplication of punishment for substantially the same crime, as in the case of *United States* v. *Katz,* 271 U. S. 354, 362.

It would seem to be admissible and wise, in a law seeking to impose taxes for the sale of an elusive subject, to require conformity to a prescribed method of sale and delivery calculated to disclose or make more difficult any escape from the tax. If this may be done, any departure from the steps enjoined may be punished, and added penalties may be fixed for successive omissions, but all for the one ultimate purpose of making it difficult to sell opium or other narcotics without registering or paying the tax.

The reasonableness of such requirements is well illustrated in the many limitations which were imposed upon the ancient freedom in the making and sale of distilled spirits, to the end that the collection of the heavy tax on the subject-matter might be successfully secured in spite of the temptation to avoid the tax. The provision of § 2 making it an offense to sell unless the purchaser gives a particular official form of order to the seller was enacted with a like object. The sale without such an order thus carries its illegality on its face. Its absence dispenses with the necessity of sending to examine the list of those registered to learn whether the seller is engaged in a legal sale. The requirement that the official forms can only be bought and obtained by one entitled to buy, whose name shall be stamped on the order form, and that after the sale the order form shall be recorded, effects a kind of registration of lawful purchasers, in addition to one of lawful sellers, and keeps selling and buying on a plane where evasion of the tax will be difficult.

There are persons who may lawfully have access to or even custody of the drugs without registration. Thus included among such persons are the employees of those

who have registered and paid the tax. If they were to attempt to sell such drugs, the necessity for an order form from the would-be purchaser would embarrass the illegal sale, for the participants would hesitate to make a record of the transaction. Thus the operation of § 2, in preventing an individual not a registered dealer or physician from acquiring the drug other than by an order form or a prescription, is directly related to tax enforcement, because such drugs are not necessarily consumed by the purchaser but may be peddled or sold illegally. These order form provisions constitute a needed check on illegal sales, and they are distinctly helpful in the detection of any attempted dealing in, or selling of, the drug free from the tax.

Section 2 of the Act is the same as it was when originally passed in 1914. The construction put upon it before the amendment of § 1, by the Revenue Act of 1918, must be the same now as before. Under § 1 in the original Act, the only provision to keep track of purchasers was the order form provision of § 2, as it is now. Without it, unless it applied to those not required to register or pay the tax, there was no restriction upon such persons, whether illegal sellers or illegal purchasers, in the disposition and spread of the drug, except the simple punishment for unregistered sellers in the first section, and there was entire immunity from order requirements of the purchasers from illegal sales. We can not suppose that, considering the general language of § 2, any such result was intended by Congress.

By the amendment of § 1, much higher occupation taxes were imposed, and they vary in amount for producers and manufacturers and for wholesale and retail dealers and for physicians. More than that, an excise tax of one cent per ounce of the drug is imposed and payment thereof is to be evidenced by stamps attached to the bottle or box

containing the drug, and the sale of the drug from anything but a stamped bottle or container is punishable. The provision for order forms is thus useful under the amended section, and there is therefore still reason for holding the provisions of § 2 to apply to all persons so as to be helpful in promoting detection of evasion from the added tax imposed under the new § 1. The two tax provisions of that section would be much less effective if a purchaser of drugs from an unregistered dealer is not required to furnish an order form. The purchaser may be himself one who should register, but has not done so, or he may be dealing in and selling the drug on which the stamp tax has not been paid, and it is just as important that sales by an unregistered dealer should be punished, unless made on a prescribed form, as that sales by registered dealers should be subject to penalty.

There is nothing in the language of the section itself that would reduce the significance of the words " any person " from the meaning of " all persons " to that of those persons only who are required to register and pay the tax, as there was in *United States* v. *Jin Fuey Moy,* 241 U. S. 394, upon which the appellant relies much. In that case, the defendant was indicted for conspiring to get morphine into the possession of an unregistered person for use by him as an addict and not for medical purposes. The question was whether the possession conspired for was within § 8 of the Act, declaring it unlawful for any person who was not registered and had not paid the special tax to have the drug in his possession. It was held that § 8 applied only to persons required to register under § 1 and pay the occupation tax. The language of § 8 is more restricted than § 2. It reads: " That it shall be unlawful for any person not registered under the provisions of this Act, and who has not paid the special tax provided for by this Act, to have in his possession or under

his control any of the aforesaid drugs." The words "any person" in § 2 are not linked with those who have not registered and have not paid the tax, but ought to do so, as are the same words in § 8. The narrow construction of § 8 in the *Jin Fuey Moy* case was reached, in part certainly, because of the juxtaposition of the words. This is shown by a more recent decision of this Court in *United States* v. *Wong Sing,* 260 U. S. 18. In that case, Wong Sing was indicted under the amendment, § 1006 of the Revenue Act of 1918, for purchasing the drug not from an original stamped package and not from a person who was a registered dealer. It was objected that, under the *Jin Fuey Moy* case, a person to be criminally liable under § 1006 must be of a class who must register and pay taxes, but it was held that that section was not limited, as § 8 was held to be.

In *Fyke* v. *United States,* 254 Fed. 225, the Circuit Court of Appeals for the Fifth Circuit decided that the proper construction of § 2, under the original Act of 1914, made it applicable to sales by any person, whether registered or not. Speaking of the Act as it was before 1918, the Court said:

"All sellers were members of the class required to register and pay the tax, under § 1, and the revenue derived from sellers, as provided for by that section, could manifestly not be collected unless Congress had the power to, and did in fact, punish the sale of the prohibited drugs by all persons except when made in conformity to the act. The necessity of prohibiting sales by unregistered persons and of sales by registered persons, not complying with the act, were of equal importance. If only the latter class were subject to its penalties, all persons, by failing to register, could sell with impunity, without paying the tax or complying with the other requirements of the act.

" Section 1 punishes sales by persons who have neither registered nor paid the tax. Section 2 punishes persons

who sell, not in pursuance of a written order of the person to whom the sale is made. The language of § 2 is general, and does not restrict the prohibition to registered sellers in terms. Indeed, the exception, lettered ' d,' applies to a class expressly excepted from registry and payment of the tax by § 1. This exception would seem to be superfluous, if § 2 applied only to registered persons, since the excepted class would not then be included in the class against whom the penalties of the section are directed."

The exception " d " here referred to is that which requires no order form to be used by officers of the national, state, county and municipal governments, in purchases for certain governmental uses, and which would indicate that such officers, who are not required to register, would, but for this exception, be covered by § 2.

The Circuit Court of Appeals of the Ninth Circuit, in *Coleman* v. *United States*, 3 F. (2d) 243, expressly found that the first provision of § 2 was not intended to be limited in its application to the persons required to register under § 1.

*United States* v. *Katz*, 271 U. S. 354, is said to be in conflict with our view of the question before us. We do not think so. Defendants there were indicted for a conspiracy to sell intoxicating liquors, without making a permanent record of the sale, in violation of § 10, Title II, of the National Prohibition Act. That section provided that no person should make, sell or transport intoxicating liquor without making a permanent record of it, showing in detail the amount and kind of liquor dealt with, the names of persons with whom dealt, and the time and place of such dealing. The form of the records was to be prescribed by the Commissioner and to be open to inspection by him, his. agent, or any peace officer of the State. The defendants contended that the section applied only to those who under the Act were authorized to sell liquor under a permit. The United States con-

tended that the section in its general negation applied
to any violator of the Act. We held with the defendants
that such a construction of § 10 imputed to Congress an
improbable incongruity, in wishing to add to the crime
of making, selling or transporting liquor a second offense
if the person committing it should fail to make a record
of his own wrong doing. It was pointed out that Con-
gress had before it the previous revenue acts governing
distillers, rectifiers and brewers, requiring detailed records
of all transactions which were lawfully subject to govern-
mental regulation as a condition of granting permits, and
that when Congress came to the Prohibition Act it
adopted the same system of permits; and the parlia-
mentary history of § 10 showed that to secure records
from its permittees was its only purpose in that section.
The *Katz* case was really, therefore, decided because of
the incongruity that would result in an interpretation of
§ 10 as claimed by the Government. Here there is really
no such incongruity.

Section 2 of the Anti-Narcotic Act introduces into the
Act the feature of the required and stamped order form
to accompany each sale. It is to bear the name of the
purchaser, and is addressed to the seller, with other data.
Recorded as the law requires it to be, it constitutes a
registry of purchasers, as distinguished from that of
sellers. Congress intended not only to punish sales with-
out registration under the first section, but also to punish
them without order forms from the purchaser to the
seller, as a means of making it difficult for the unregis-
tered seller to carry through his unlawful sales to those
who could not get order forms. Thus an illegal unregis-
tered seller might wish to clothe his actual unregistered
sales with order forms that would give the transaction a
specious appearance of legality. To punish him for this
misuse of an order form is not to punish him for not

recording his own crime. It is to punish him for an added crime—that of deceiving others into the belief that the sale is a lawful sale. There is no incongruity in increasing the criminal liability of the non-registered seller who fails to use an order form in his sales, or who misuses it. Both the registered and the non-registered seller are, under our construction of the section, punished for not using the order forms as the statute requires, or for misusing them. The order form is not a mere record of a past transaction—it is a certificate of legality of the transaction being carried on, or else it is a means of discovering the illegality and is useful for the latter purpose. We think the resemblance of the *Katz* case and this case is superficial and that they are distinguishable.

We are of opinion, therefore, that the provision which is contained in the first sentence of § 2 of the Act is not limited in its application to those persons who by § 1 are required to register and pay the tax. We answer the first question in the negative.

This brings us to the second question, which is " . . . is the provision as so construed, constitutional? " It was held to be constitutional in *United States* v. *Doremus*, 249 U. S. 86, 94. In that case the validity of the Anti-Narcotic Drug Act, as it was enacted, December 17, 1914, 38 Stat. 785, was under examination by this Court. The inquiry was whether § 2, in making sales of the drugs unlawful except to persons giving orders on forms issued by the Commissioner of Internal Revenue, to be preserved for official inspection, and forbidding any person to obtain the drugs by means of such order forms for any other purpose than use, sale or distribution in the conduct of a lawful business, or in the legitimate practice of his profession, bore a reasonable relation to the enforcement of the tax provided by § 1 and did not exceed the power of Congress. It was held that § 2 aimed to confine sales

to registered dealers, and to those dispensing the drugs as physicians, and to those who come to dealers with legitimate prescriptions of physicians; that Congress, with full power over the subject, inserted these provisions in an Act specifically providing for the raising of revenue. Considered of themselves, the Court thought that they tended to keep the traffic aboveboard and subject to inspection by those authorized to collect the revenue; that they tended to diminish the opportunity of unauthorized persons to obtain the drugs and sell them clandestinely without paying the tax imposed by the federal law. This Court said in the *Doremus* case:

" This case well illustrates the possibility which may have induced Congress to insert the provisions limiting sales to registered dealers and requiring patients to obtain these drugs as a medicine from physicians or upon regular prescriptions. Ameris, being as the indictment charges an addict, may not have used this great number of doses for himself. He might sell some to others without paying the tax, at ·least Congress may have deemed it wise to prevent such possible dealings because of their effect upon the collection of the revenue."

Referring to the same § 2, in *United States* v. *Balint*, 258 U. S. 250, 253; this Court said:

" It is very evident from a reading of it that the emphasis of the section is in securing a close supervision of the business of dealing in these dangerous drugs by the taxing officers of the Government and that it merely uses a criminal penalty to secure recorded evidence of the disposition of such drugs as a means of taxing and restraining the traffic."

Four members of the Court dissented in the *Doremus* case, because of opinion that the court below had correctly held the Act of Congress, in so far as it embraced the matters complained of, to be beyond its constitutional

power, and that the statute, in § 2, was a mere pretext as a tax measure and was in fact an attempt by Congress to exercise the police power reserved to the States and to regulate and restrict the sale and distribution of dangerous and noxious narcotic drugs. Since that time, this Court has held that Congress by merely calling an Act a taxing act can not make it a legitimate exercise of taxing power under § 8 of Article I of the Federal Constitution, if in fact the words of the act show clearly its real purpose is otherwise. *Child Labor Tax Case,* 259 U. S. 20, 38. By the Revenue Act of 1918, the Anti-Narcotic Act was amended so as to increase the taxes under § 1, making an occupation tax for a producer of narcotic drugs of $24 a year, for a wholesale dealer, $12, for a retail dealer, $6.00, and for a physician administering the narcotic, $3.00. The amendment also imposes an excise tax of one cent an ounce on the sale of the drug. Thus the income from the tax for the Government becomes substantial. Under the Narcotic Act, as now amended, the tax amounts to about one million dollars a year, and since the amendment in 1919 it has benefited the Treasury to the extent of nearly nine million dollars. If there was doubt as to the character of this Act—that it is not, as alleged, a subterfuge—it has been removed by the change whereby what was a nominal tax before was made a substantial one. It is certainly a taxing act now as we held in the *Alston* case.

It may be true that the provisions of the Act forbidding all but registered dealers to obtain the order forms has the incidental effect of making it more difficult for the drug to reach those who have a normal and legitimate use for it, by requirement of purchase through order forms or by physician's prescription. But this effect, due to the machinery of the Act, should not render the order form provisions void as an infringement on state

318°—28——23

police power where these provisions are genuinely calculated to sustain the revenue features. Section 2 was once sustained by this Court some nine years ago, with more formidable reason against it than now exists under the amended statute. Its provisions have been enforced for those years. Whatever doubts may have existed respecting the order form provisions of the Act have been removed by the amendment made in 1919.

We said in the *Child Labor Tax Case*, 259 U. S. 20, 38:

" Taxes are occasionally imposed in the discretion of the legislature on proper subjects with the primary motive of obtaining revenue from them and with the incidental motive of discouraging them by making their continuance onerous. They do not lose their character as taxes because of the incidental motive."

In this case, the qualification of the right of a resident of a State to buy and consume opium or other narcotic without restraint by the Federal Government, is subject to the power of Congress to lay a tax by way of excise on its sale. Congress does not exceed its power if the object is laying a tax and the interference with lawful purchasers and users of the drug is reasonably adapted to securing the payment of the tax. Nor does it render such qualification or interference with the original state right an invasion of it because it may incidentally discourage some in the harmful use of the thing taxed. *License Tax Cases*, 5 Wall. 462; *Nicol* v. *Ames*, 173 U. S. 509, 524; *Knowlton* v. *Moore*, 178 U. S. 41, 60, 61; *In re Kollock*, 165 U. S. 526, 536.

This leads to an answer to the second question in the affirmative, and makes it unnecessary for us to answer the remaining third and fourth questions.

The separate opinion of MR. JUSTICE McREYNOLDS.

Nigro, not alleged to be registered as a dealer, was charged with violating § 2 of the Harrison Anti-Narcotic

Act by selling opium (whether in or from an original stamped package does not appear) to Raithel, not a dealer, without an order upon a form issued by the Commissioner of Internal Revenue.

It is maintained, first, that § 2 applies to all sales, including, of course, those made by one who is not registered, to a purchaser who cannot possibly secure an order form; and, secondly, that so construed, it is constitutional. Both propositions, I think, are wrong.

Section 1 of the Act imposes a definite tax (uniform for each class) upon " every person " who imports, manufactures, produces, compounds, sells, deals in, dispenses, or gives away opium; also a stamp tax of one cent per ounce upon the drug. All who are subject to the tax are required to register; and the section further provides—

" It shall be unlawful for any person required to register under the provisions of this Act to import, manufacture, produce, compound, sell, deal in, dispense, distribute, administer, or give away any of the aforesaid drugs without having registered and paid the special tax as imposed by this section.

Section 2. declares—

" That it shall be unlawful for any person to sell, barter, exchange, or give away any of the aforesaid drugs [opium, &c.] except in pursuance of a written order of the person to whom such article is sold, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue. . . .

" The Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, shall cause suitable forms to be prepared for the purposes above mentioned, and shall cause the same to be distributed to collectors of internal revenue for sale by them to those persons who shall have registered and paid the special tax as required by section one of this Act in their districts, respectively; . . ."

Obviously, no one who has not registered and paid the special tax laid by § 1 can obtain " suitable forms."

Fair application of the principles of construction approved in *United States* v. *Palmer,* 3 Wheaton 610; *United States* v. *Jin Fuey Moy,* 241 U. S. 394, and *United States* v. *Katz,* 271 U. S. 354, should at least limit the words " any person " in the first line of § 2 to those required to register by § 1, which renders unlawful every sale by an unregistered person, whether the purchaser possesses an order blank or no. And it seems unreasonable to conclude that the purpose of the next section was awkwardly to state something already plainly declared.

The sale by Nigro was to one who could not obtain an order blank. Only a small group—importers, manufacturers, dealers, etc.—can obtain these blanks. As construed by the United States, the statute prohibits all sales except to those who are registered or hold physicians' prescriptions—no others can buy lawfully. Admittedly, the statute is valid only as a revenue measure. Any provision therein not appropriate to that end is beyond the power of Congress.

I can discover no adequate ground for thinking Congress could have supposed that collection of the prescribed tax would be materially aided by requiring those who engage in selling surreptitiously to consumers to do an impossible thing—receive an order upon a blank which the purchaser could not obtain. The plain intent is to control the traffic within the States by preventing sales except to registered persons and holders of prescriptions, and this amounts to an attempted regulation of something reserved to the States. The questioned inhibition of sales has no just relation to the collection of the tax laid on dealers. The suggestion to the contrary is fanciful. Although disguised, the real and primary purpose is not difficult to discover and it is strict limitation and regulation of the traffic.

Whether, or how far, opium, tobacco, diamonds, silk, etc., may be sold within their borders is primarily for the States to decide; the Federal Government may not undertake direct regulation of such matters.

This Court said in *United States* v. *Wong Sing,* 260 U. S. 18, 21: " There could be no object in requiring a purchaser of the drugs to register, but it fulfilled the purpose of the law to forbid a purchase ' except in the original stamped package or from the original stamped package.' "

The habit of smoking tobacco is often deleterious. Many think it ought to be suppressed. The craving for diamonds leads to extravagance and frequently to crime. Silks are luxuries and their use abridges the demand for cotton and wool. Those who sell tobacco, or diamonds, or silks may be taxed by the United States. But, surely, a provision in an act laying such a tax which limited sales of cigars, cigarettes, jewels, or silks to some small class alone authorized to secure official blanks would not be proper or necessary in order to enforce collection. The acceptance of such a doctrine would bring many purely local matters within the potential control of the Federal Government. The admitted evils incident to the use of opium cannot justify disregard of the powers " reserved to the States respectively, or to the people."

MR. JUSTICE SUTHERLAND concurs in these views.

MR. JUSTICE BUTLER, dissenting.

Section 1 was originally enacted December 17, 1914, c. 1, 38 Stat. 785. It was amended by the Revenue Act of 1918 passed February 24, 1919, § 1006, c. 18, 40 Stat. 1057, 1130. It contains the following: " It shall be unlawful for any person required to register under the provisions of this Act to . . . sell . . . any of the aforesaid drugs without having registered and paid the special tax as imposed by this section."

Section 2 appeared in its present form in the original Act. The pertinent provision is: " It shall be unlawful for any person to sell . . . any of the aforesaid drugs except in pursuance of a written order of the person to whom such article is sold . . . on a form to be issued in blank for that purpose by the Commissioner of Internal Revenue." 38 Stat. 786.

The effect of these two provisions is to prohibit sale by any person who has not registered and to permit sale by a registered person upon a written blank issued by the Commissioner. That conclusion is so plain that discussion cannot affect it.

Question 1 should be answered Yes.
Question 2 need not be answered.
Question 3 should be answered Yes.
Question 4 should be answered No.

MR. JUSTICE SUTHERLAND concurs in this opinion.