**UNITED STATES v. BRANDENBURG.**

No. 8973.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 25, 1946.

Decided April 12, 1946.

Frederic M. P. Pearse, of Newark, N. J. (Samuel L. Hirschberg, of West New York, on the brief), for appellant.

Charles A. Stanziale, of Newark, N. J. (Edgar H. Rossbach, U. S. Atty., of Newark, N. J., on the brief), for appellee.

Before B I G G S, G O O D R I C H, and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

This is an appeal from the judgment of the District Court of New Jersey following a conviction on eleven counts of an indictment charging Leopold William Bran-

denburg with violation of Section 2 of the Harrison Narcotics Law.[1]

Dr. Brandenburg practiced medicine in Union City, Hudson County, New Jersey. He was duly registered as required by the statute. For several months in 1944, Dr. Brandenburg prescribed morphine sulphate in varying quantities to James B. Humphries and Ralph V. Van Pelt. Humphries was a drug addict in the employ of the Narcotics Bureau. Van Pelt was a government agent working on narcotics cases. In September, 1944, Dr. Brandenburg was arrested on charges of violating the Harrison Narcotics Act. An indictment was handed down containing eleven counts. The first six charged sales of certain quantities of the drug by Dr. Brandenburg to Humphries. The last five charged similar sales to Van Pelt.

Appellant here challenges the sufficiency of the indictment; the evidence relied on for a conviction; rulings of the trial judge on instructions to the jury; and finally, refusal to set aside the verdict because of the presence in the jury room of certain exhibits.

Under Section 2 of the statute, it is unlawful for any person to sell, barter or exchange or give away certain drugs (including morphine sulphate) except in pursuance of a written order of the transferee on a form issued for that purpose by the Secretary of the Treasury. An exception is made, however, to "the dispensing or distribution of any of the drugs * * * to a patient by a physician * * * registered under Section 3221 in the course of his professional practice only." [2]

It has long been held that the mere issuance of a prescription which is subsequently filled by a druggist constitutes a "sale" under the statute: Jin Fuey Moy v. United States, 1920, 254 U.S. 189, 41 S.Ct. 98, 65 L.Ed. 214.[3] By judicial interpretation, the excepting language has been restricted to bona fide treatment of a patient's disease by a physician. Thus, under the guise of "treating" a patient a physician may not by issuing prescriptions make it possible for drugs to be peddled or for known addicts merely to satisfy their craving: United States v. Behrman, 1922, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619. However, a prescription of a moderate amount of drugs issued even to a known addict is not criminal if the physician in good faith is attempting to "treat" the disease or consequences of the addiction: Linder v. United States, 1925, 268 U.S. 5, 45 S.Ct. 446, 69 L.Ed. 819, 39 A.L.R. 229; United States v. Boyd, 1926, 271 U.S. 104. To be sure, prescribing grossly inordinate quantities would negative the notion that the physician was in fact administering treatment rather than merely catering to the satisfaction of the drug craving: United States v. Behrman, supra; Mitchell v. United States, 10 Cir., 1943, 143 F.2d 953; cf. Direct Sales Co. v. United States, 1943, 319 U.S. 703, 63 S.Ct. 758, 87 L.Ed. 1125; United States v. Abdallah, 2 Cir., 1945, 149 F.2d 219.

With these principles in mind, we shall consider the assignments of error challenging the sufficiency of the indictment and the government's proof.

## I. The Indictment.

Except for differences in dates and quantities and that six refer to Humphries and five to Van Pelt, all eleven counts of

---

[1] 26 U.S.C.A. Int.Rev.Code, § 2554.

[2] 26 U.S.C.A. Int.Rev.Code, § 2554(c) (1).

[3] In Nigro v. United States, 8 Cir., 1941, 117 F.2d 624, the court rejected the contention that such "sale" occurs only when the druggist is aware of the illicit quality of the prescription he fills. The theory of this contention is that the physician thus participates as "an aider and abettor or as a conspirator, in an illegal sale by a druggist." Discarding this theory, the court stated, 117 F.2d at page 631, "If the physician's guilt is made to depend upon collusion between him and the druggist or upon the druggist's knowledge of the illegal character of the prescription, the crime of the physician depends entirely upon the whim of the addict. If the addict has the prescription filled by an innocent druggist, the physician's act although unlawful is not punishable under the Act, whereas if the addict purchases from a druggist with guilty knowledge of the illegal character of the prescription, the physician is guilty of participation in the sale. In either case the unlawful quality of the physician's act remains the same; and in either case the evasion of the tax is equally probable. Nigro v. United States, 276 U.S. 332, 346, 352, 48 S.Ct. 388, 72 L.Ed. 600; United States v. Doremus, 249 U.S. 86, 94, 39 S.Ct. 214, 63 L. Ed. 493; Ratigan v. United States, 9 Cir., 88 F.2d 919, 921." Appellant here does not assert that his acts failed to constitute "sales" under the statute. Cf. United States v. Abdallah, 2 Cir., 1945, 149 F. 2d 219.

the indictment are alike. Count 1 of the indictment may thus be referred to as illustrative of all the counts. If it charges and indictable offense, so do the others. Stripping aside the cloak of scrivener's English, we find that the first count avers the following facts: (1) The defendant sold to Humphries 100 tablets, ¼ grain each, of morphine sulphate (a derivative of opium); (2) such sale was made not in pursuance of the requisite written order of Humphries; (3) the sale was not made by the defendant in good faith and in the course of his professional practice only; (4) the sale was effected through a prescription signed by the defendant and calling for the delivery to Humphries of 25 grains of morphine sulphate; (5) the defendant intended that Humphries should obtain the drugs from a druggist by means of the prescription; (6) Humphries did, in fact, thereby obtain the drugs prescribed; (7) Humphries did not require the administration of morphine sulphate by means of any disease; (8) the defendant did not sell the drugs for the purpose of treating any disease; (9) the drugs were sold in the form in which such drugs are usually consumed by addicts to satisfy their cravings; and (10) the drugs were sold by the defendant with the intent that they should be used by addicts to satisfy their cravings.

It will be seen, therefore, that the rather elaborately drawn count does not charge a sale of drugs to a known addict. In essence, the charge is that the drugs were sold to a purchaser for the purpose of satisfying the cravings of unspecified addicts. Under the principles already enunciated there can be no doubt that an indictable offense is thus charged. Obviously, a physician who prescribes drugs in bad faith, not in the course of his professional practice only and for the purpose of satisfying the cravings of drug addicts is guilty of an indictable offense under the statute and the decisions cited above, interpreting it.

We conclude, therefore, that the indictment is sufficient.

## II. The Government's Proof.

■ We test the sufficiency of the government's proof by the familiar rule that conviction signifies belief in what was testified to by the government witnesses: See United States v. Simon, 3 Cir., 1941, 119 F.2d 679, 682. The only question is thus whether it was sufficient proof to go to a jury: Burton v. United States, 1906, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362; United States v. Angelo, 3 Cir., 1946, 153 F.2d 247.

■ The government's proof, in short, was as follows: Humphries was a patient of a Dr. Brady who also practiced in Union City, Hudson County, New Jersey. On the occasion of one visit to Dr. Brady's office, either because the doctor was ill or out of town, Humphries was unable to see him and, informed that Dr. Brandenburg was then treating Dr. Brady's patients, Humphries visited the appellant. The evidence is clear that Humphries came to Brandenburg for treatment. He professed to be suffering from a disease, "gall-stones" or "gall-bladder trouble", which caused him severe pains and for which other physicians had been prescribing morphine. When Dr. Brandenburg suggested an operation, he countered by saying that he was unable to submit to surgery because he was a merchant mariner with impending sea duty. Moreover, he was unable to obtain morphine aboard ship. Thus, he requested a prescription for morphine. Without a physical examination, Dr. Brandenburg prescribed 25 grains of morphine.

The government's proof up to this point would not sustain a conviction: See Towbin v. United States, 10 Cir., 1938, 93 F.2d 861, 866, where the court, reversing a narcotics conviction, stated, "The government proved a dispensing of drugs by a physician in the practice of his profession. This does not alone constitute a crime, and a jury's verdict based on such evidence does not make it such."

However, the government proceeded to prove that, subsequently, Humphries and Van Pelt visited the appellant and obtained additional prescriptions under circumstances casting doubt on the bona fides of Brandenburg. It was proof which would permit the inference that the appellant issued the prescriptions not for the purpose of treating disease but rather to satisfy appetites for drugs. Certainly, it was enough to raise a jury issue.

The government's evidence, if believed, proved that Humphries returned to appellant's office approximately two months after his first visit. He received a prescription and continued to visit Dr. Brandenburg at various intervals in July, August and September. Each time he obtained a prescription for narcotics for which he paid five dollars. Dr. Brandenburg never gave him

an examination. Government exhibit G-14, admitted in evidence without objection, was a batch of 26 prescriptions for morphine sulphate in amounts up to 30 half grains. Under date of August 8, 1944, for example, Humphries obtained from the appellant two prescriptions; one was for 30 half grains, the other for 30 grains. Under date of August 14, 1944, there were two prescriptions, both for 25 grains. Under date of August 16, 1944, there was a prescription for 25 grains and under date of August 17, 1944, there was one for 25 grains. On five occasions, two prescriptions were obtained on the same day. On another five occasions, an interval of but one day elapsed between prescriptions for substantial quantities of morphine sulphate.

The repeated prescribing of the drug in such quantities and at such intervals was sufficient evidence to raise a serious doubt as to Dr. Brandenburg's good faith. Consequently, we must conclude that the jury believed the physician-patient relationship terminated or that the prescriptions were issued in bad faith by the appellant. For this belief there was sufficient warrant in the proof.

We reach a similar conclusion regarding the Van Pelt prescriptions. To be sure, there was an introduction by Humphries of Van Pelt to appellant as a "tubercular brother-in-law." And Van Pelt also simulated suffering from pains. But the frequency of the issuing of the prescriptions and the quantities prescribed were factors which made the question of good faith one for the jury: Trader v. United States, 3 Cir., 1919, 260 F. 923; certiorari denied 1919, 251 U.S. 555, 40 S.Ct. 119, 64 L.Ed. 412; United States v. Abdallah, supra.

Consequently, the assignment of error challenging the sufficiency of the government's proof is overruled.

### III. New Trial.

■ Asserting an inadvertent and improper presence among the exhibits sent out with the jury, of certain written matter, appellant seeks a new trial. Among the many prescriptions offered in evidence by the government were three which were attached to sheets of paper and pinned together. These bore legends, evidently drafted by government agents, and to the effect that the prescriptions "were purchased" from Dr. Brandenburg and "postdated". Neither counsel noticed these legends. Casual inspection by defense counsel before they went into the evidence did not reveal the typewritten and handwritten hearsay statements. It was not until several days after the jury returned its verdict that appellant's counsel first noticed the existence of the legends. He then brought the matter before the trial judge on motion to set the verdict aside. The court denied the motion. In this, we think he erred: United States v. Dressler, 7 Cir., 1940, 112 F.2d 972, and cf. United States v. Michener, 3 Cir., 1945, 152 F.2d 880, 885.

Obviously, these hearsay statements might have been influential in the jury's determination of the vigorously contested question of Dr. Brandenburg's good faith. And on appeal, we are unable to evaluate what weight the jury attached to them: United States v. Michener, supra. Therefore, a new trial must be had.

In view of our conclusions, it is unnecessary to pass on the remaining assignments of error.

Reversed and remanded for new trial.