Mary **BONAVITACOLA**
v.
**UNITED STATES of America.**
Civ. A. No. 19675.

United States District Court
E. D. Pennsylvania.
Nov. 4, 1955.

---

Joseph Matusow and Irving Marks, Philadelphia, Pa., for plaintiff.

Alan J. Swotes, Philadelphia, Pa., W. Wilson White, U. S. Atty., Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

■ This case comes before the court on a motion by defendant under Rule 12, Fed.R.Civ.P., 28 U.S.C. to dismiss a petition (filed October 13, 1955) for the return of petitioner's 1955 Ford automobile which has been seized by the defendant because of its use in transporting a narcotic drug, under the terms of Sections 1 and 2 of the Act of August 9, 1939, c. 618, 53 Stat. 1291, as amended, 49 U.S.C.A. §§ 781, 782.[1]

1. At the argument on October 27, counsel for petitioner offered to amend the action to make Joseph M. Bransky, District Supervisor of the Federal Bureau of Narcotics, the defendant and this opinion is being written on the assumption that he is the defendant, even though no formal motion has been presented to the court. The record discloses that a copy of the petition was served on the District Office of the Federal Narcotics Bureau on October 20, 1955, by leaving a copy with "Albert R. Bendon, Narcotic Agent." Although the United States of America, as sovereign, is immune from suit, an officer or agent of the United States who acts in violation of the terms of the United States Constitution and beyond his statutory authority in withholding property claimed by plaintiff, as petitioner alleges Mr. Bransky and his subordinates have done in this case, is subject to a suit in personam to compel him to desist from such conduct. See Land v. Dollar, 1947, 330 U.S. 731, 736, 737, 67 S.Ct. 1009, 91 L.Ed. 1209 and cases there cited. In that case, the court said, 330 U.S. at page 738, 67 S.Ct. at page 1012:

The petition and affidavits filed disclose that petitioner's son was driving the above-mentioned car in Philadelphia on September 26, 1955, with her consent but without her knowledge that he had in his possession in the car at that time 1⁷⁄₁₀ grain of heroin in powdered form, wrapped in a piece of tin foil, which heroin he had purchased earlier the same day.[2] While petitioner's son was making a delivery of a dress for petitioner in her car on the above date, in the normal conduct of her business of operating a dress shop, the Philadelphia police arrested him and seized the above-mentioned automobile. This seizure was adopted by the Federal Bureau of Narcotics on September 27, 1955, when the automobile was delivered into its custody, and, on September 28, 1955, that Bureau appraised the car at a value of $2,000. The seizure of the vehicle was advertised on October 21, 1955, October 28, 1955, and November 4, 1955, in accordance with the terms of Section 607 of the Act of June 17, 1930, c. 497, Title IV, 46 Stat. 754, 19 U.S.C.A. § 1607.[3] Petitioner filed, on October 25, 1955,[4] a Petition for Remission of the Forfeiture of this automobile in accordance with the provisions of Section 618 of the Act of June 17, 1930, c. 497, Title IV, 46 Stat. 757, 19 U.S.C.A. § 1618,[3] and the petition is "presently under consideration" by the Treasury Department.

Although petitioner had no knowledge or reason to believe that her son had narcotics in his possession at the time he was operating this automobile on September 26, 1955, or that he had ever had narcotics in his possession since December 1953, she did know that he had been arrested in California in September 1953 as a user of narcotics.[5]

Petitioner needs this automobile in her business, is suffering great hardship by being deprived of its use, and is required to pay $67.61 per month to liquidate a loan secured by the automobile, while the car is daily depreciating in value.[6]

"We say the foregoing cases are distinguishable from the present one, though as a matter of logic it is not easy to reconcile all of them. But the rule is based on practical considerations reflected in the policy which forbids suits against the sovereign without its consent. The 'essential nature and effect of the proceeding' may be such as to make plain that the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration. Ex parte State of New York, 256 U.S. 490, 500, 502, 41 S.Ct. 588, 590, 591, 65 L.Ed. 1057. If so, the suit is one against the sovereign. Mine Safety [Appliances] Co. v. Forrestal, supra, 326 U.S. [371] at page 374, 66 S.Ct. [219] at page 221 [90 L.Ed. 140]. But public officials may become tort-feasors by exceeding the limits of their authority. And where they unlawfully seize or hold a citizen's realty or chattels, recoverable by appropriate action at law or in equity, he is not relegated to the Court of Claims to recover a money judgment. The dominant interest of the sovereign is then on the side of the victim who may bring his possessory action to reclaim that which is wrongfully withheld."

2. An affidavit of petitioner's son states that the purchase was made for $5.00, the quantity was "sufficient for one dose," which he intended to use that night, and that "he did not use the automobile to obtain said dose."

3. Section 4 of the Act of August 9, 1939, c. 618, 53 Stat. 1292, 49 U.S.C.A. § 784, makes the laws relating to the seizure of vessels and vehicles for violation of the customs laws, Sections 602 to 624 of the Act of June 17, 1930, c. 497, Title IV, 46 Stat. 754–759, 19 U.S.C.A. §§ 1602–1624, apply to the forfeiture of vehicles used in the transportation of narcotic drugs.

4. It was stated at the argument that this petition had been filed at an earlier date but it had been returned for "proper documentation." It was mailed to Mr. Bransky in proper form on October 24, 1955.

5. Petitioner believed that her son was completely rehabilitated and cured of narcotic addiction prior to his return to Philadelphia. Unknown to his mother, he had resumed the narcotics habit about a month prior to September 26, 1955. Since that date, petitioner has made commendable efforts to cure her son and rehabilitate him through medical treatments.

6. Petitioner's affidavit, filed October 27, 1955, included this language:
"* * * that she purchased the said automobile on April 28, 1955, for the sum of $2556.65, subject to a lien in favor of

By filing a claim for the automobile under Section 608 of the Act of June 17, 1930, c. 497, Title IV, 46 Stat. 755, 19 U.S.C.A. § 1608,[3] petitioner can have the matter transmitted to the United States Attorney with the result that a Libel will be filed and the validity of this seizure determined. Even if the court should find the car was properly seized, the car may also be returned to her through remission of the forfeiture by the Secretary of the Treasury as a result of her petition filed October 25.

 The Federal Courts have regularly held that a claimant of seized property in petitioner's position must follow those procedures established by Sections 602 to 624 of the Act of June 17, 1930, c. 497, Title IV, 46 Stat. 754–759, 19 U.S.C.A. §§ 1602–1624,[3] in order to secure the return of her car. United States v. Kemp, 10 Cir., 1951, 186 F.2d 808; United States v. Heckinger, 2 Cir., 1947, 163 F.2d 472; United States v. One 1946 Plymouth Sedan, D.C.E.D.N.Y.1946, 73 F.Supp. 88.[7] The last two cases state that a Federal District Court may not release the seized vehicle even though petitioner posts a bond in the amount of the appraised value of the car.

 Even assuming that this court could consider in this proceeding the merits of the seizure in this case, the record now before the court would support a finding that this package of heroin, being transported in this automobile on September 26, 1955, was a contraband article under the statutory language now under consideration.[8] It admittedly did not bear any tax-paid Internal Revenue stamps, which are required by Sections 4701 and 4771 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 4701 and 4771, and the record contains no evidence whatsoever that the heroin was purchased or distributed from an original stamped package.[9] The absence of such stamps also indicates that the package was acquired in violation of the law under Section 4704 of the Internal Revenue Code of 1954, 26 U.S.C. § 4704, which makes the absence of tax-paid revenue stamps prima facie evidence of a violation of that Section and states that it is unlawful to purchase narcotic drugs "except in the original stamped package or from the original stamped package".[10] Furthermore, it

the Broad Street Trust Company in the sum of $1622.75, and that she is required to pay the sum of $67.61 per month to liquidate the said indebtedness."

3. See note 3 on page 490.

7. See, also, United States v. Nobles, D.C.N.J.1952, 109 F.Supp. 8; De Bonis v. United States, D.C.W.D.Pa.1952, 103 F.Supp. 119. In the Kemp case, the court said in 186 F.2d at page 809:
 "Appellee's only remedy is to petition the Secretary of the Treasury under Section 1618 of the Tariff Act, 19 U.S.C.A. (the applicable custom law), which expressly authorizes the Secretary to grant remission or mitigation 'if he finds such * * * forfeiture was incurred without willful negligence or without any intention * * * to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation * * *.'"

8. The first section of the statute cited in the first sentence of this opinion, 49 U.S.C.A. § 781, makes it "unlawful to trans-

port, carry, or convey any contraband article in, upon, or by means of any * * * vehicle * * *; to * * * possess any contraband article in or upon any * * * vehicle * * *." A contraband article is defined as "Any narcotic drug which * * * has been acquired or is possessed, sold, transferred, or offered for sale, in violation of any laws of the United States dealing therewith; * * * * or which does not bear appropriate tax-paid internal-revenue stamps as required by law or regulations * * *." Section 2 of this statute 49 U.S.C.A. § 782, provides that any vehicle in, upon or by means of which any violation of Section 1 has taken place shall be seized and forfeited.

9. It is axiomatic that a petitioner for equitable relief has the burden of establishing his case. See Greenfield v. Blumenthal, 3 Cir., 1934, 69 F.2d 294.

10. See United States v. Chiarelli, 7 Cir., 1951, 192 F.2d 528, certiorari denied 342 U.S. 913, 72 S.Ct. 359, 96 L.Ed. 683, rehearing denied 342 U.S. 950, 72 S.Ct. 551,

would have been a violation of the laws of the United States for the petitioner's son to acquire this heroin without use of the order form contemplated by Section 4705 of the Internal Revenue Code of 1954, 26 U.S.C. § 4705, since there is no indication in the record that the heroin was acquired on a physician's prescription or under any other of the exceptions described in that Section.[11]

■■ Petitioner also contends that even if this package was a contraband article, making her car subject to seizure under the terms of 49 U.S.C.A. § 781 et seq., the procedures outlined in 49 U.S.C.A. §§ 781–784, and, 19 U.S.C.A. §§ 1602–1624, involve the taking of her car for such a long period that she is deprived of her property, needed in her business, without due process of law in violation of the Fifth Amendment to the Constitution of the United States. In this connection, she emphasizes that she had no means of anticipating that her son would transport narcotics in her car.[12]

The United States Supreme Court has considered at great length the necessity of strict provisions in order to enforce the stamp taxes on narcotics in view of the small size of the article taxed. See Nigro v. United States, 1927, 276 U.S. 332, 48 S.Ct. 388, 72 L.Ed. 600,[13] and cases there cited. See also United States v. Hymowitz, 2 Cir., 1952, 196 F. 2d 819, 820, 821. In view of these authorities and the fact that petitioner knew her son had been a user of narcotics approximately two years ago, I find that she has not been deprived of

96 L.Ed. 706; Ng Sing v. United States, 9 Cir., 1926, 8 F.2d 919. The cases cited by counsel for petitioner apply to language of former statutory provisions in this field and are distinguishable from the facts of this case.

11. The defendant also suggested at the hearing that the admitted possession of this heroin places on petitioner the burden of explaining that her son did not facilitate its concealment or sale after having been illegally imported, knowing it was imported contrary to law, within the terms of Sections 1 and 5(1) of the Act of November 2, 1951, c. 666, 65 Stat. 767, 21 U.S.C.A. § 174. Respondent apparently contends that failure of the petitioner's son to explain in his affidavit the source or circumstances under which he possessed this heroin established that it is a contraband article under the language of 49 U.S.C.A. § 781(b) in view of the terms of this 1951 Act. See United States v. Ah Hung, D.C.E.D.N.Y.1917, 243 F. 762 (construing the predecessor of the 1951 Act). However, due to the decision in United States v. One Nash Coupe, D.C. N.D.Ill.1930, 47 F.2d 249, and to the existence of other grounds for application of the language in 49 U.S.C.A. § 781, it is not necessary to pass on this contention of the defendant in this case.

12. The opinion of Chief Judge Kirkpatrick in United States v. One 1951 Oldsmobile Sedan, Libel No. 30 of 1953, D. C., 135 F.Supp. 873, approved judgment of forfeiture on facts very similar to these.

13. In the Nigro case, the court used the following language in 276 U.S. at pages 343–345, 48 S.Ct. at page 391:

"The importation, preparation, and sale of the opiate or other like drugs and their transportation and concealment in small packages are exceedingly easy, and make the levy and collection of a tax thereon correspondingly difficult. More than this, use of the drug for other than medicinal purposes leads to addiction, and causes the addicts to resort to so much cunning, deceit and concealment in the procurement and custody of the drug and to be willing to pay such high prices for it that, to be efficient, a law for taxing it needs to make thorough provision for preventing and discovering evasion of the tax— as by requiring that sales, purchases and other transactions in the drug be so conducted and evidenced that any dealing in it where the tax has not been paid may be detected and punished and that opportunity for successful evasion may be lessened as far as may be possible.

\* \* \* \* \* \*

"It would seem to be admissible and wise in a law seeking to impose taxes for the sale of an elusive subject to require conformity to a prescribed method of sale and delivery calculated to disclose or make more difficult any escape from the tax. If this may be done, any departure from the steps enjoined may be punished, and added penalties may be fixed for successive omissions, but all for the one ultimate purpose of making it difficult to sell opium or other narcotics without registering or paying the tax."

her rights under the due process clause of the Fifth Amendment at this time and, further, that the Federal Bureau of Narcotics has not exceeded its powers.[14] Since no time limit is provided for action to be taken by the United States Attorney under 19 U.S.C.A. § 1608 and by the Secretary of the Treasury under 19 U.S.C.A. § 1618 [15] my order dismissing the petition will be entered without prejudice to the right of the petitioner to institute another action for relief if there is unreasonable delay in passing on her claims under these statutory provisions.

14. Goldsmith, Jr.-Grant Co. v. United States, 1921, 254 U.S. 505, 510–512, 41 S.Ct. 189, 65 L.Ed. 376; General Finance Co. of Louisiana v. United States, 5 Cir., 1930, 45 F.2d 380, 381; and cases cited in those cases.

15. Contrary to the position taken by the United States Attorney at the argument, the Second Circuit Court of Appeals has stated that the Secretary of the Treasury may remit the forfeiture at any time after seizure of the vehicle, using this language in United States v. Heckinger, supra, 163 F.2d at page 474:

"This conclusion is confirmed when one observes that the Secretary's power is not limited to the period after decree, but covers the whole period between seizure of the vehicle and its sale."