**UNITED STATES of America,**
**Appellee,**

v.

**James MINOR, Appellant.**

**No. 527, Docket 31953.**

United States Court of Appeals
Second Circuit.

Argued June 11, 1968.

Decided July 3, 1968.

John S. Allee, Asst. U. S. Atty., New York City (Robert M. Morgenthau, U. S. Atty., Pierre N. Leval, Asst. U. S. Atty., of counsel), for appellee.

Phylis Skloot Bamberger, Legal Aid Society, New York City (Anthony F. Marra, New York City, of counsel), for appellant.

Before FRIENDLY, SMITH and KAUFMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The sole question presented is whether the Fifth Amendment privilege against self-incrimination affords a defense to a prosecution for selling narcotic drugs without the mandatory written order form required by 26 U.S.C. § 4705(a).[1]

■ Following a trial before Judge Weinfeld without a jury, appellant James Minor was found guilty on two counts of selling heroin hydrochloride without the prescribed Treasury Department written order form. He was sentenced to the statutory minimum of five years' imprisonment on each count, the sentences to run concurrently. On this appeal, Minor does not allege the commission of any error by the Judge at the trial and concedes that we must affirm if we conclude that requiring compliance with § 4705(a) does not contravene the privilege against self-incrimination. Thus, for our purposes it is sufficient to note that Minor's one-day trial was not atypical of the usual narcotics prosecution. The government's case was presented through the testimony of federal agents and the defendant introduced evidence purporting to show that he was entrapped. Any conflicts or discrepancies in the testimony were obviously for the fact finder to resolve, United States ex rel. Anderson v. Fay, 394 F.2d 109 (2d Cir. 1968) (per curiam). Accordingly, we turn at once to consideration of Minor's Fifth Amendment claim.[2]

The problem before us has its genesis in a trilogy of recent decisions in which the Supreme Court reemphasized the importance of the privilege against self-incrimination in our adversary system of criminal justice and extended its reach to those "inherently suspect of criminal activities," Albertson v. S. A. C. B., 382 U.S. 70, 79, 86 S.Ct. 194, 15 L.Ed.2d 165 (1965), who are required by certain statutes to register with the Secretary of the Treasury or to pay special taxes. In

1. Section 4705(a) provides that:
   "It shall be unlawful for any person to sell, barter, exchange, or give away narcotic drugs except in pursuance of a written order *of the person to whom such article is sold*, bartered, exchanged, or given, on a form to be issued in blank for that purpose by the Secretary or his delegate." (Emphasis supplied.)

2. Although Minor did not claim a violation of his Fifth Amendment rights before Judge Weinfeld, the government does not contend that this failure presents a bar to reversal of his conviction. See Grosso v. United States, 390 U.S. 62, 70–72, 88 S.Ct. 709 (1968); United States v. Manfredonia, 391 F.2d 229 (2d Cir. 1968).

Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), the Court reversed a conviction under the federal wagering tax statutes for evading payment of the annual occupational tax, 26 U.S.C. § 4411, and for wilfully failing to register with the Treasury, 26 U.S.C. § 4412; in Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968) a conviction for violating § 4411 and for failing to pay the special excise tax imposed on wagering, 26 U.S.C. § 4401, was set aside; in Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968), the same fate befell a conviction for knowingly possessing a firearm, 26 U.S.C. § 5851, which had not been registered as required by 26 U.S.C. § 5841. In all three instances, Mr. Justice Harlan, speaking for the Court, reasoned that the petitioner was confronted by a comprehensive statutory scheme directed against a proscribed activity and was required, on pain of prosecution, to provide the government with information that might be used to convict him of a crime.

Minor claims here that the prohibition against the transfer of narcotics except in pursuance of a written order form is comparable to the provisions before the Supreme Court in *Marchetti, Grosso* and *Haynes* and that consequently his conviction must fall. Although § 4705(a) has been enforced against thousands of violators since its enactment in 1914, 38 Stat. 786, including cases which reached the Supreme Court, e. g., Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), we recognize that the Court's recent pronouncements re-

quire a fundamental reevaluation of the statute.[3] Our examination of the statutory scheme convinces us, however, that *Marchetti* and its companion cases are not dispositive of this appeal and that there is no conflict between enforcement of § 4705(a) and the purpose, philosophy and spirit of the privilege against self-incrimination.

Considered *in vacuo*, compliance with § 4705(a) does not present any threat of self-incrimination. It simply provides that no sale may be made except to one who furnishes an appropriate Treasury Department written order form. The statutory language makes manifest—and Minor concedes—that the purchaser of narcotics and not the seller is under compulsion to apply for and obtain the requisite order form.[4] Even if we were to assume *arguendo* that the registration and tax provisions infringe upon the *purchaser's* Fifth Amendment rights because order forms are available only to prospective purchasers who have registered under 26 U.S.C. § 4722 and paid the special tax imposed by 26 U.S.C. § 4721,[5] see 26 U.S.C. § 4705(f), it hardly follows that a *seller*, such as Minor, is immune from prosecution for selling to a person who failed to provide the form. We need cite no authority for the principle that the privilege afforded by the Fifth Amendment is personal and that under the circumstances present here a seller cannot benefit from the privilege allegedly available to the buyer. Whatever views Minor may have had concerning passing of possession of heroin, it is clear that standing under the Fifth Amendment is not freely negotiable nor transferable.

---

3. The Supreme Court recently granted certiorari in Leary v. United States, 392 U.S. 903, 88 S.Ct. 2058, 20 L.Ed.2d 1362 (April 27, 1968), in which one of the issues presented is the validity of the marijuana tax and registration provisions in light of the privilege against self-incrimination.

4. See note 1, supra.

5. Section 4722 provides, in relevant part, that "every person who engages in any

of the activities enumerated in section 4721 shall register with the Secretary or his delegate his name or style, place of business * * *."

Section 4721 provides, in relevant part, that "every person who imports, manufactures, produces, compounds, sells, deals in, dispenses, or gives away narcotic drugs shall pay the special taxes hereinafter provided."

Minor maintains, however, that § 4705(a) must be examined in the context of the entire statutory and regulatory scheme and that when so viewed the potential for incrimination becomes apparent. Specifically, he argues that 26 C.F.R. § 151.185 requires the seller to enter on the form supplied by the buyer the number and size of the stamped packages of drugs furnished and the date that each order was filled. In addition, both the seller and the buyer must preserve a copy of the form for 2 years and keep it readily accessible to inspection by appropriate government officials, 26 U.S.C. §§ 4705(d) and (e); [6] and a third copy of the form must be forwarded by the seller to the narcotic district supervisor of the district in which the seller is located, 26 C.F.R. § 151.201. Minor urges, therefore, that the information he was required to furnish and make available to the government "would surely prove a significant 'link in a chain' of evidence tending to establish his guilt" under a number of statutes. See Marchetti v. United States, supra, 390 U.S. at 48, 88 S.Ct. 697. In sum, it is Minor's claim that his answers on the form would tend to prove that he supplied narcotic drugs outside the original stamped package (outlawed by 26 U.S.C. § 4704), and presumably that it follows that he failed to register with the Treasury Department as required by 26 U.S.C. § 4722, and that he possessed narcotic drugs in violation of 26 U.S.C. § 4724(c).[7]

The government retorts: "It is sufficient answer that appellant was [indicted under section 4705(a) and was] not charged with violation of these other provisions." In effect, we are asked to focus solely on § 4705(a), ignore the balance of the statutory scheme and the regulations, and leave the resolution of possible self-incrimination claims under those provisions to another day. But, the Supreme Court has informed us that we must give appropriate consideration in our analysis to closely related statutory requirements in determining whether there exists a "real and appreciable," Reg. v. Boyes, 1 B & S 311, 330; Brown v. Walker, 161 U.S. 591, 599–600, 16 S. Ct. 644, 40 L.Ed. 819 (1896), hazard of incrimination:

> "We must conclude that here, as in Albertson [v. S. A. C. B., supra], the validity under the Constitution of [criminal] prosecutions for wilful failure to pay the excise tax may properly be determined only after assessment of the hazards of incrimination which would result from 'literal and full compliance' with all [the] statutory requirements." Grosso v. United States, supra, 390 U.S. at 65, 88 S.Ct. at 712.

Nevertheless, we are of the view that the issue we are called upon to resolve is significantly different from those before the Supreme Court in *Marchetti, Grosso* and *Haynes* and we conclude that Minor's conviction must be affirmed because compliance with § 4705(a) would not have subjected him to the risk of self-incrimination. If § 4705(a) serves a distinct Congressional purpose and can be meaningfully enforced apart from the sections which allegedly pose the incrimination dilemma, it is incumbent upon us to consider it as an isolated enactment in order to avoid the adjudication of a serious constitutional issue. See, e. g., Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 348, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (concurring opinion of Mr. Justice Brandeis), cited in Haynes v. United States, supra, 390 U.S. at 92, 88 S.Ct.

---

6. As originally enacted in 1914, these provisions were contained in the same paragraph as present section 4705(a). See 38 Stat. 787.

7. Section 4704 provides, in relevant part, that "it shall be unlawful for any person to purchase, sell, dispense, or distribute narcotic drugs except in the original stamped package or from the original stamped package."

Section 4724(c) provides, in relevant part, that "it shall be unlawful for any person who has not registered and paid the special tax * * * to have in his possession or under his control narcotic drugs."

at 722. Moreover, Congress has specifically provided that:

"If any provision of this title [title 26], or the application thereof to any person or circumstances, is held invalid, the remainder of the title, and the application to other persons or circumstances, shall not be affected thereby." 26 U.S.C. § 7852(a).

And, we believe that § 4705(a) serves an important function within the statutory scheme even if, which we do not decide, the seller cannot be forced to fill out the form and to keep it available for government inspection. Requiring that sales be made only to persons who have acquired and are able to produce Treasury forms ensures that narcotic drugs will not be transferred to unauthorized purchasers or to those who are likely to evade the payment of taxes imposed under 26 U.S.C. §§ 4701 and 4721. See Nigro v. United States, 276 U.S. 332, 346–347, 48 S.Ct. 388, 72 L.Ed. 600 (1928). Compare United States v. Hymowitz, 196 F.2d 819, 821 (2d Cir. 1952) (discussing what is now subdivision (g) of section 4705). The Court's statement in Nigro is quite relevant:

"Congress intended not only to punish sales without registration * * * but also to punish them without order forms from the purchaser to the seller, as a means of making it difficult for the unregistered seller to carry through his unlawful sales to those who could not get order forms." 276 U.S. at 350, 48 S.Ct. at 393.

Although the Court in that case focused upon potential sales by unregistered sellers, its analysis is equally apposite to sales by those legally in possession of narcotics. In both situations, § 4705(a) ensures that narcotics do not fall into the hands of those who, for one reason or another, cannot satisfy the registration requirements of § 4722. And, a seller's failure to fill out or retain the order form in no way affects the statutory purpose of limiting sales to purchasers who are duly authorized to deal in narcotic drugs. Thus, we conclude as

the Court did in Nigro that: "To punish him [the seller] for this misuse [or, in the instant case, lack of use] of an order form is not to punish him for not recording his own crime." 276 U.S. at 350–351, 48 S.Ct. at 394.

We recognize, of course, that in Marchetti, Grosso and Haynes the Supreme Court refused to sever one statutory provision from another in considering whether the statutory scheme presented a danger of incrimination, but the valid reasons that justified those results are absent here. In Marchetti the Court decided that the obligations under the wagering tax statutes to register and pay the occupational tax are "essentially inseparable elements of a single registration procedure" because under settled Treasury practice a payment of the tax would not be accepted unless accompanied by a completed registration form. See 390 U.S. at 42–43, 88 S.Ct. at 700. Similarly, in Grosso the Court refused to distinguish between the obligation to pay the gambling excise tax and to file the requisite tax return, although the two were separately punishable, because of government policy to refuse the payment unless submitted with a return. 390 U.S. at 65, 88 S.Ct. 697. In the instant case, as we have already noted, a seller of narcotic drugs is not required to register or in any other way to incriminate himself in order to comply fully with the requirements of § 4705(a). And the discussion of severability in Haynes was manifestly concerned with an entirely different problem since the Court merely reasoned that a conviction under the registration clause of 26 U.S.C. § 5851 could not be properly distinguished from a conviction for failure to register firearms as required by 26 U.S.C. § 5841. Since § 5851 specifically rendered illegal the possession of firearms which have not been "registered as required by section 5841" no other conclusion was possible.

In sum, we hold that compliance with § 4705(a) would not have required Minor to risk incriminating himself. Whether any other section of the Inter-

nal Revenue Code dealing with trade in narcotics impinges upon the right against self-incrimination is a question we need not decide at this time.

There is a further persuasive distinction between the issue before us and those presented in *Marchetti* and its companion cases. In *Marchetti* and *Grosso* the Court placed great emphasis on the wide prohibition against gambling under both federal and state law, 390 U.S. at 44–48, 88 S.Ct. at 697, 707, and stressed that the gambling statutes were directed at a "selective group inherently suspect of criminal activities," 390 U.S. at 57, 88 S.Ct. at 707.[8] The firearms registration statutes before the Court in *Haynes* had the even more apparent purpose of gathering information from possible criminals in order to secure their conviction of various crimes. The Court noted:

> "The registration requirement is thus directed principally at those persons who have obtained possession of a firearm without complying with the Act's other requirements, and who therefore are immediately threatened by criminal prosecutions * * *." 390 U.S. at 96, 88 S.Ct. at 730.

Section 4705(a), on the other hand, cannot be said to be directed primarily at those "inherently suspect of criminal activities." Our previous discussion of its purpose was intended to make it evident that it was one section of an important and significant statutory scheme regulating the conduct of a lawful business. While we are not unaware that many have been prosecuted for violating the narcotics provisions of the Internal Revenue Code, we cannot accept Minor's argument that the narcotic drug business consists entirely, or even in the main, of shadowy figures in the underworld passing small glassine bags in dark alleyways. On the contrary, we have been advised by the government that as of December 1966, there were 394,193 persons duly registered under the narcotics laws who were authorized to obtain written order forms from the government and engage legitimately in narcotic drug transactions, and of these only one person was prosecuted during 1966 for a violation. See Traffic in Opium and Other Dangerous Drugs, U. S. Treasury Department, Bureau of Narcotics (1966), at pp. 10 and 44. We have also been informed that in that year over 170,000 kilograms of opium and over 260,000 kilograms of coca leaves were imported legally into the United States while only approximately 100 kilograms of narcotic drugs were seized or purchased in the illicit market by federal agents. Id. at 43. It would not be factual to say of the narcotics statutes and regulations what the Supreme Court said of other more general tax provisions—that they are "directed at the public at large," see United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927); Albertson v. S. A. C. B., supra, 382 U.S. at 79, 86 S.Ct. at 199; it would be equally inaccurate, however, to say, that they are "directed at a highly selective group inherently suspect of criminal activities," ibid.

It is not our function to anticipate changes of doctrine and thus render ineffective a vital statutory scheme designed by the Congress to regulate the potentially dangerous traffic in narcotic drugs.

Affirmed.

8. This provided one ground upon which the Court distinguished the "required records" doctrine of Shapiro v. United States, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948). The Court also distinguished *Shapiro* on other grounds, but did not believe it necessary to weigh the relative significance of the factors it found present in *Shapiro* but absent in *Marchetti, Grosso* and *Haynes*. See 390 U.S. at 57, 88 S.Ct. at 697 (*Marchetti*); 390 U.S. at 68, 88 S.Ct. at 709, (*Grosso*); 390 U.S. at 98–99, 88 S.Ct. at 722 (*Haynes*).