**Efrain SANTOS, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 16985.**

United States Court of Appeals Seventh Circuit.

Aug. 19, 1969.

---

Julius Lucius Echeles, Jo Anne Wolfson, Chicago, Ill., for petitioner-appellant.

Alfred W. Moellering, Fort Wayne, Ind., Joseph F. Eichhorn, Bluffton, Ind., for respondent-appellee.

Before MAJOR and HASTINGS, Senior Circuit Judges and CUMMINGS, Circuit Judge.

HASTINGS, Senior Circuit Judge.

Efrain Santos appeals from the district court's denial of his motion, filed pursuant to 28 U.S.C.A. § 2255, for collateral relief from a judgment of conviction entered by that court following a jury trial.

The record before us establishes that appellant was charged in five counts of a six-count indictment with violating federal marihuana and conspiracy statutes. Two of such counts charged a conspiracy while the other three charged substantive offenses. On November 15, 1966, appellant was found guilty by a jury verdict and was convicted of violating 26 U.S.C.A. §§ 4742(a), 4744(a) (1) and 18 U.S.C.A. § 371. His conviction was affirmed by this court on November 13, 1967 in United States v. Santos, 7 Cir., 385 F.2d 43 (1967), cert. denied, 390 U.S. 954, 88 S.Ct. 1048, 19 L.Ed.2d 1148.

Seeking collateral relief from his conviction, appellant claimed that he was deprived of the effective assistance of counsel at the trial level [1] and that the marihuana statutes under which he was convicted contravene the Fifth Amendment privilege against self-incrimination.[2]

In denying appellant's § 2255 petition for relief on May 15, 1968, the trial court, with deference to then existing precedent, did not find the challenged marihuana statutes unconstitutional and stated that if such laws should be held unconstitutional " * * * it should be done by the Supreme and Appellate Courts which have previously upheld the statutes against constitutional attacks." The reasoning espoused in the recent Supreme Court decisions of Leary v. United States, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (May 19, 1969), and United States v. Covington, 395 U.S. 57, 89 S.Ct. 1559, 23 L.Ed.2d 94 (May 19, 1969), compels us to reverse the trial court's order in dismissing appellant's § 2255 petition for relief.

The privilege against self-incrimination as guaranteed by the Fifth Amendment provides a full defense to the substantive counts charged against Santos. Further, the conspiracy counts must fall with the underlying substantive counts. See Grosso v. United States, 390 U.S. 62, 70, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968).

■ It appears clear that Leary requires a reversal of Santos' conviction under § 4744(a) (1).[3] In Leary, the Supreme Court reversed the petitioner's conviction under 26 U.S.C.A. § 4744(a) (2) holding that the "petitioner's invocation of the privilege [against self-incrimination] was proper and * * * should have provided a full defense" to the count alleging a violation of § 4744 (a) (2). The necessary implication of Leary is that the substantive violations under § 4744(a) (1) in the instant case can not be sustained. No reasonable grounds exist for distinguishing between a conviction premised on § 4744(a) (1) and a conviction obtained under § 4744 (a) (2). Both provisions of § 4744 share identical constitutional infirmities and are equally subject to the privilege against self-incrimination, as guaranteed by the Fifth Amendment. These provisions of § 4744, when viewed within the context of the comprehensive statutory scheme of the Marihuana Tax Act,[4] expose a person to a "real and

---

1. In view of our disposition of this case, we do not deem it necessary to reach the question of whether appellant was denied effective assistance of counsel.

2. Insofar as relevant the Fifth Amendment provides:
 "No person * * * shall be compelled in any criminal case to be a witness against himself * * *."

3. Insofar as relevant, 26 U.S.C.A. § 4744 (a) provides:
 "It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by section 4741 (a)—

 "(1) to acquire or otherwise obtain any marihuana without having paid such tax, or

 "(2) to transport or conceal, or in any manner facilitate the transportation or concealment of, any marihuana so acquired or obtained."

4. In Leary, supra 395 U.S. at 14–15, 89 S.Ct. at 1536–1537, the Supreme Court aptly summarizes the statutory scheme of the Marihuana Tax Act:
 "The Marijuana Tax Act has two main subparts. The first imposes a tax on transfers of marijuana, the second an occupational tax upon those

appreciable" risk of self-incrimination, within the rationale of Leary v. United States, *supra*, Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), and Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968).

We are also of the view that the Fifth Amendment privilege against self-incrimination may be invoked as a defense to a charge premised upon § 4742 (a) [5] and find that Santos' conviction under this section must fall under the weight of *Leary* and the related cases of Marchetti v. United States, *supra*, Grosso v. United States, *supra*, and Haynes v. United States, *supra*. As noted in *Leary*, "§ 4742 makes it unlawful for any person, 'whether or not required to pay a special tax and register under sections 4751 to 4753,' to transfer marijuana except pursuant to a written order form to be obtained by the transferee."

who deal in the drug. It is convenient to begin with the occupational tax provisions, 26 U.S.C. §§ 4751–4753.

"Section 4751 provides that all persons who 'deal in' marijuana shall be subject to an annual occupational tax. Subsections require that specified categories of persons, such as importers, producers, physicians, researchers, and millers pay varying rates of tax per year. See §§ 4751(1)–(4), (6). Persons who 'deal in' marijuana but do not fall into any of the specified categories are required to pay $3 per year. See § 4751(5). Section 4753 provides that at the time of paying the tax the taxpayer must 'register his name or style and his place or places of business' at the nearest district office of the Internal Revenue Service.

"The first of the transfer tax provisions, 26 U.S.C. § 4741, imposes a tax 'upon all transfers of marijuana which are required by § 4742 to be carried out pursuant of written order forms.' Section 4741 further provides that on transfers to persons registered under § 4753 the tax is $1 per ounce, while on transfers to persons not so registered the tax is $100 per ounce. The tax is required to be paid by the transferee 'at the time of securing each order form.' With certain exceptions not here relevant, § 4742 makes it unlawful for any person, 'whether or not required to pay a special tax and register under sections 4751 to 4753,' to transfer marijuana except pursuant to a written order form to be obtained by the transferee. A regulation, 26 CFR § 152.69, provides that the order form must show the name and address of the transferor and transferee; their § 4753 registration numbers, if they are registered; and the quantity of marijuana transferred. Another regulation, 26 CFR § 152.66, requires the transferee to submit an application containing these data in order to obtain the form. Section 4742 (d) of the Act requires the Internal Revenue Service to 'preserve' in its records a duplicate copy of each order form which it issues.

"Another statutory provision, 26 U.S.C. § 4773, assures that the information contained in the order form will be available to law enforcement officials. That section provides that the duplicate order forms required to be kept by the Internal Revenue Service shall be open to inspection by Treasury personnel and state and local officials charged with enforcement of marijuana laws, and that upon payment of a fee such officials shall be furnished copies of the forms.

"Finally, 26 U.S.C. § 4744(a) makes it unlawful for a transferee required to pay the § 4741(a) transfer tax either to acquire marijuana without having paid the tax or to transport, conceal, or facilitate the transportation or concealment of, any marijuana so acquired."

5. Insofar as relevant, 26 U.S.C.A. § 4742 provides:

"(a) *General requirement.*—It shall be unlawful for any person, whether or not required to pay a special tax and register under sections 4751 to 4753, inclusive, to transfer marihuana, except in pursuance of a written order of the person to whom such marihuana is transferred, on a form to be issued in blank for that purpose by the Secretary [of the Treasury] or his delegate.

\* \* \* \* \*

"(c) \* \* \* whenever any such forms are sold, the Secretary or his delegate shall cause the date of sale, *the name and address of the proposed vendor*, the name and address of the purchaser, and the amount of marihuana ordered to be plainly written or stamped thereon before delivering the same." (Emphasis added.)

Thus, before a legal transfer of marihuana can be made, the transferor is statutorily obliged, under pain of criminal prosecution, to have the transferee obtain the required order form. To secure the order form, the transferee, pursuant to § 4742(c), *supra*, must disclose the name and address of the proposed transferor.

When considered in conjunction with other interrelated sections of the Marihuana Tax Act, the net legal effect of § 4742(a) is to place the criminal transferor in the position of being statutorily *required* to provide the government with information "which would surely prove a significant 'link in the chain' of evidence tending to establish his guilt." Marchetti v. United States, *supra* 390 U.S. at 48, 88 S.Ct. at 703. This is true since the order form mandate of § 4742 (a) compels the criminal transferor to require the transferee to obtain an order form and to identify him not only as a transferor of marihuana but as a transferor who has not registered and paid the occupational tax required by §§ 4751–4753. This interplay of the sections exposes the criminal transferor to a real hazard of self-incrimination since such information becomes readily available to investigative authorities.

■ We see no legally significant reason for distinguishing between the *Marchetti* type statutory scheme, in which the defendant is required to personally incriminate himself, and the more subtle statutory scheme, as is found in the instant case, where the law requires the defendant to compel another to divulge equally incriminating information. Both statutory schemes confront the defendant with a real and substantial risk of incrimination. The privilege against self-incrimination provides a complete defense to prosecution for failure to comply with either incriminating scheme. There is a "right not to be criminally liable for one's previous failure to obey a statute which required an incrimina-

tory act." Leary v. United States, *supra,* 395 U.S. at 28, 89 S.Ct. at 1544.

In the recent case of United States v. Buie, 2 Cir., 407 F.2d 905 (1969), the Second Circuit was faced with resolving the identical issue of whether the Fifth Amendment privilege against self-incrimination can be invoked by a defendant-transferor as a defense to a conviction for transferring marihuana without the written order form required by § 4742(a). On the authority of its decision in United States v. Minor, 2 Cir., 398 F.2d 511 (1968) [6], the *Buie* court affirmed the defendant-transferor's conviction and concluded that under the statutory scheme of the Marihuana Tax Act the defendant did not *personally* reveal his own identity and thereby incriminate himself. In substance, the court held that "the privilege against self-incrimination is personal" and is not violated so long as the defendant-transferor does not have to personally provide the incriminatory information.

We respectfully disagree with the holding in *Buie* and feel that the *Minor* decision is not apposite to the resolution of this issue.

While it is manifestly clear that the interplay of § 4742(a) and 4742(c) results in the transferee providing the incriminatory information about the defendant-transferor, it is equally certain that the statutory interplay compels the defendant to cause the transferee to reveal such information. The protective boundaries of the privilege are not so narrow as to fail to encompass the situation where one is compelled, under threat of criminal prosecution, to have another incriminate him.

■ In determining whether an individual is entitled to the shelter of the Fifth Amendment privilege, we feel that the spirit and philosophy of the privilege against self-incrimination require us to focus our attention on the question of whether the person seeking the insulation of the shelter is compelled, either

6. The Supreme Court recently granted certiorari in Minor v. United States, 395 U.S. 932, 89 S.Ct. 2000, 23 L.Ed.2d 447 (June 2, 1969).

personally or through another, to provide self-incriminating information. To hold that the shelter of the privilege is contingent solely upon the question of who actually provided the incriminatory material unnecessarily restricts the boundaries of the privilege and thwarts its purpose.

With deference, in our judgment, the *Minor* holding is distinguishable from and is not dispositive of the issue presented by the instant case and that in *Buie*. *Minor* involved the question of whether the privilege against self-incrimination affords a defense to a conviction for selling narcotic drugs (heroin) without the mandatory written order form required by § 4705(a) of the correlative Narcotic Drugs Tax Act. Section 4705(a) makes it unlawful for any person to transfer narcotic drugs except pursuant to a written order form which is to be obtained by the transferee from the appropriate governmental authorities. In affirming the defendant-transferor's § 4705(a) conviction, the *Minor* court held that the defendant's "compliance with § 4705(a) would not have subjected him to the risk of self-incrimination" because the transferor "of narcotic drugs is not required to register *or in any other way to incriminate himself in order to comply fully with the requirements of § 4705(a)*." (Emphasis added.) United States v. Minor, *supra* at 514–515. Herein, in our judgment, rests the critical distinction between *Minor* and *Buie*.

As shown, § 4742(a) does have the effect of forcing the defendant-transferor to risk the hazards of self-incrimination since to comply with the section, the transferor is required to have the transferee obtain the prescribed order form and thereby disclose his identity. Compliance with § 4705(a) does not en-tail the same risk because under the statutory scheme of the Narcotic Drugs Tax Act the transferee is able to obtain the required order form without revealing the identity of the defendant-transferor. See Lawler v. United States, 7 Cir., 413 F.2d 622 (1969).

 On the authority of Grosso v. United States, *supra*, 390 U.S. at 70–72, 88 S.Ct. 709, we are constrained to hold that the appellant did not knowingly waive his constitutional privilege against self-incrimination by failing to raise this defense at trial or upon appeal. It would be anomalous and contravene the precepts of fairness to hold otherwise for at the time of the appellant's trial and appeal the decisions in *Leary, Marchetti, Grosso* and *Haynes* had not been handed down. It is axiomatic that "unless the defendant is fully aware of a constitutional right, he cannot effectively waive it." United States v. Rosenson, D.C.E. D.La., 291 F.Supp. 874, 878 (1968). See also Fay v. Noia, 372 U.S. 391, 439–440, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), and United States ex rel. O'Connor v. State of New Jersey, 3 Cir., 405 F.2d 632, 634 (1969). Under the circumstances of the instant case, there is no reason to believe Santos knowingly waived a constitutional right which evolved subsequent to his trial and appeal.[7] Defendants should not be required to anticipate favorable Supreme Court rulings "or compelled to make the futile gesture of raising the privilege at trial to preserve their rights in the event of * * * [a favorable forthcoming] decision." United States v. Manfredonia, 2 Cir., 391 F.2d 229, 230 (1968).

 Our holding is premised upon the reasoning of the foregoing Supreme Court decisions which were handed down

7. The *Leary* opinion also requires that the constitutional question be raised in timely fashion. By timeliness, we understand the Court to be referring to the doctrine that an issue must first be presented to the district court before it can be argued on appeal. In the present case, in view of the fact that *Marchetti* and its com-panion cases as well as *Leary* were decided after petitioner's conviction became final on appeal, we are of the opinion that the presentation of these unwaived constitutional questions to the district court in the petition to vacate and set aside the conviction was timely and that the issues are now properly before us for decision.

after the appellant's conviction became final. Obviously, our decision in this matter assumes that these recent cases should be given retroactive effect. While we are fully aware of the present conflict in the circuits with respect to the resolution of the issue of retroactivity [8], we are persuaded by the reasoning and the result reached in United States v. Miller, 4 Cir., 406 F.2d 1100 (1969). The import of the Fourth Circuit holding is that these cases are entitled to retroactive application under the guidelines set forth in Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

In sum, we conclude that the Supreme Court in *Leary* changed the ground rules and held that the Fifth Amendment privilege against self-incrimination bars a conviction of an unregistered transporter of marihuana who could not comply with the requirements of 26 U.S.C.A. §§ 4741 et seq., without incriminating himself.[9] The learned district court did not have the benefit of *Leary* in dismissing appellant's petition for relief under § 2255, Title 28, U.S.C.A.

Having concluded that appellant could not be held to have waived his constitutional right to assert his privilege against self-incrimination and that *Leary* should be given retroactive application to bar his conviction, we are left with no alternative but to reverse and remand with directions.

Accordingly, the judgment of the district court denying appellant's § 2255 petition for relief is reversed, and this cause is remanded to the district court with directions to grant the relief sought in said petition and for any other action required not inconsistent with this opinion.

Reversed and Remanded.

---

8. In the case of Graham v. United States, 6 Cir., 407 F.2d 1313, March 10, 1969, the Sixth Circuit in a per curiam opinion held that *Marchetti* and *Grosso* were not to be applied retroactively to a conviction which became final prior to the date of these decisions.

9. For a careful analysis of *Leary* and *Covington* see 38 U.S.L.W. 3052-53 (July 29, 1969).