UNITED STATES of America

v.

Frank L. SILVERMAN, Defendant.

No. 68 Cr. 336.

United States District Court,
S. D. New York.

Feb. 2, 1970.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for United States, by James T. B. Tripp, Asst. U. S. Atty., New York City.

Atlas, Berg & Mendalis, New York City, for defendant, Anthony H. Atlas, New York City, of counsel.

MANSFIELD, District Judge.

Defendant, a member of the New York bar, is charged with filing false and fraudulent income tax returns for the years 1961 through 1965, in violation of 26 U.S.C. § 7201. Claiming that the indictment under which he is charged is based upon information procured in violation of his Fourth and Fifth Amendment rights, he moves for an order suppressing all evidence derived from the inspection of certain documents filed by him in accordance with rules of the Appellate Division, First Department, of the State of New York (Part 4, Rule IV (1)). He also seeks a bill of particulars and discovery and inspection of his tax returns and certain statements made by him.

During the tax years in question defendant maintained a law office in New York County from which he carried on a law practice consisting chiefly of the handling of personal injury claims and actions. In those cases handled on a contingent fee basis he was required by the rules of the Appellate Division, First Department, to file both a brief retainer statement and a more elaborate closing statement setting forth, *inter alia*, the gross amount of the recovery, the person (usually the insurance carrier) by whom it was paid, the amount paid to the client, expenses and disbursements charged against the client's share of the recovery, and the amount retained by the attorney as his fee. These statements, originally required to be filed with the Appellate Division, must now be filed with the Judicial Conference of the State of New York. Failure to file such statements constitutes professional misconduct that can result in suspension or disbarment. McKinney's New York Court Rules § 603.2; New York Judiciary Law, McKinney's Consol.Laws, c. 30, § 90(2).

McKinney's New York Court Rules § 603.4(c) (1) provides that:

"All statements of retainer or closing statements filed shall be deemed to be confidential and the information therein contained shall not be divulged or

made available for inspection or examination except upon written order of the Presiding Justice of the Appellate Division."

On March 14, 1961, pursuant to this section and to a request from the Chief of the Intelligence Division of the Internal Revenue Service, the Presiding Justice of the Appellate Division for the First Department entered an order directing the Judicial Conference and the clerk of the court to permit Special Agents of the Internal Revenue Service to examine retainer and closing statements, upon presentation of a letter of authorization from an official of the Intelligence Division specifying the statements to be examined.

On January 6 and September 26, 1966, the Chief of the Intelligence Division addressed letters to the Presiding Justice requesting that Special Agent Arnold M. Juliano be permitted to inspect the retainer and closing statements filed by defendant Silverman during the years 1958 through 1965, as well as statements filed under the names of Irwin B. Silverman and Silverman & Silverman during the years 1960 through 1965.

Defendant claims that the present indictment is predicated in large part, if not in its entirety, upon information derived from the closing statements examined by Agent Juliano. He argues in support of his motion to suppress that the 1961 grant of blanket permission for such examination, as well as the manner of granting specific permission in this case, constituted an improper search under the Fourth Amendment, and that the obtaining of the records themselves constitutes an infringement of his Fourth and Fifth Amendment rights and violates his privilege against self-incrimination.

■ Defendant's Fourth Amendment objection to examination of the closing statements must be rejected for lack of standing. We find no merit in his unsupported contention that the Appellate Division and the Judicial Conference are "mere custodians" of such statements and that the statements belong to the lawyers who file them. Defendant has no possessory interest in the records filed with the Appellate Division and the Judicial Conference. Once filed, they become the property of the Judicial Conference. See United States v. Shapiro, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948). Defendant was neither on nor had any interest in the premises of the Judicial Conference at 270 Broadway, New York City, where the statements were examined, and he is not charged with a crime involving possession of the statements he desires to suppress. Hence he is without standing to complain that the statements were improperly procured by the Internal Revenue Service. See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); United States v. Lopez, 420 F.2d 313 (2d Cir., Dec. 1, 1969).

■ Defendant's Fifth Amendment arguments, while more substantial, must also be rejected. Essentially he contends that the closing statements may not be used against him in a criminal prosecution for the reason that they were obtained under threat of disbarment and therefore are self-incriminatory in nature. Cited as the principal support for this argument is the Supreme Court's decision in Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), which held that a lawyer could not be disbarred for refusal on grounds of self-incrimination to produce documents in a disciplinary proceeding investigating his professional practices. Silverman further urges that the closing statements are analogous to statements at issue in Marchetti v. United States, 390 U.S. 39, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968), and Grosso v. United States, 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906 (1968), which reversed convictions based on failure to register and disclose gambling activity as required by federal excise tax statutes.

There is a fundamental distinction between the present case and those relied upon by defendant. In the latter the

compulsory disclosures posed a substantial risk of prosecution, conviction, or loss of a license to practice law. As the Supreme Court pointed out in *Marchetti,* for instance, registration as a gambler enhanced the likelihood of punishment for past gambling offenses by calling attention to the registrant as a gambler and requiring him to disclose information useful to the investigation of his previous activities. It was noted that because of the "comprehensive system of federal and state prohibitions against wagering" disclosure of gambling activity would generally reveal a violation of federal or state law. Similarly in *Spevack* the institution of an investigation into a lawyer's professional conduct posed a substantial risk that his compelled disclosures would lead to his disbarment.

■ The contingent fee disclosures required by the Appellate Division, First Department, do not pose such substantial risks of self-incrimination. Their obvious and legitimate purpose is to keep contingent fee arrangements within the percentage limits prescribed by court rules, McKinney's New York Court Rules § 603.4(a) (2), not of "coerc[ing] evidence from persons engaged in illegal activities for use in their prosecution." Grosso, 390 U.S. p. 74, 88 S.Ct., p. 717 (1968) (Brennan, J., concurring). While attorneys engaged in contingent fee practice are not the "public at large" at whom regulatory statutes upheld against self-incrimination claims in such cases as United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927), were aimed, they scarcely constitute a "selective group inherently suspect of criminal activities," Marchetti v. United States, 390 U.S. 39, 57, 88 S.Ct. 697, 707, 19 L.Ed.2d 889 (1968); United States v. Minor, 398 F.2d 511, 516 (2d Cir. 1968), and the records here, being required by law, did bear some "public aspects." United States v. Shapiro, 335 U.S. 1, 32–35, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948).

Furthermore, the First Department requires closing statements to be filed within 15 days of the receipt of a contingent fee. McKinney's New York Court Rules § 603.4(b) (1). Hence most, if not all, such statements from which the Internal Revenue Service might have derived information were filed before the filing of the income tax returns upon which this indictment is based. It is true that the mere fact that the disclosures antedate the criminal acts to which they relate, standing alone, will not deprive the person making them of the protection against self-incrimination. See Marchetti, 390 U.S. at 53–54, 88 S.Ct. at 705, 706. "[I]t is not mere time to which the law must look, but the substantiality of the risks of incrimination." *Id.* at 54, 88 S.Ct. at 705, 706. As the court recognized, however, "prospective acts will doubtless ordinarily involve only speculative and insubstantial risks of incrimination." *Id.* Such is the case here. The closing statements themselves did not, at the time of filing, constitute evidence of criminal conduct, or even suggest the likelihood that they might be relevant to such conduct later. They did not tend to identify defendant as a member of a suspect class, or to draw the attention of law enforcement authorities to him. At the time of filing they were wholly consistent with innocence of any tax evasion and at that time defendant may well have intended to declare all of the income they disclosed. If defendant later understated his income in filing tax returns, the criminal act did not occur, and may not have been conceived, until long after he filed his closing statements with the First Department and the Judicial Conference. Once he understated his income the closing statements, of course, may have become useful to the Government as a source of incriminating information. But they were no more incriminating than a report of any lawful business activity as a source of unreported income, and their use did not violate defendant's privilege against self-incrimination.

■ Thus the mere fact that defendant was compelled to file the closing

statements is not a sufficient ground for invocation of the Fifth Amendment privilege against self-incrimination. The test is whether there was a substantial risk of incrimination involved in making the required disclosures. Closing statements do not pose such a risk. They are no different than tax returns filed under threat of criminal penalties, which are admissible against the taxpayer in subsequent tax prosecutions, absent the kind of substantial dangers of self-incrimination present in *Marchetti* and *Grosso*.

For all of these reasons defendant's motion to suppress must be denied.

Defendant also moves for a bill of particulars as to a number of items in the indictment. First, he requests that the Government specify the amount of gross income allegedly received by him during each of the tax years in which he is charged with understating his income. The Government has consented to furnish such information.

■ Second, defendant requests a complete itemization, by category and source, of the gross income figures supplied pursuant to his first request. The Government consents to furnish·

> "the amount of dividend, legal-professional, capital gains and interest income received by the defendant during each of the years in question. The Government, however, opposes furnishing a complete itemization as requested by the defendant at this time on the ground that such a request unnecessarily delves into the evidentiary details of the Government's case, would unnecessarily restrict the Government's proof and would impose a severe burden on the Government."

In light of the Government's further consent to furnish a complete itemization within two weeks before trial of the case, the request is denied except as consented to. The figures supplied will be more than adequate to obviate any problems of double jeopardy and to enable defendant to prepare his defense, while the complete itemization two weeks be-

fore trial will make doubly certain that defendant is not the victim of any prejudicial surprises at trial. See United States v. Lebron, 222 F.2d 531 (2d Cir.), cert. denied, 350 U.S. 876, 76 S.Ct. 121, 100 L.Ed. 774 (1955); United States v. Kahaner, 203 F.Supp. 78 (S.D.N.Y. 1962); United States v. Crisona, 271 F.Supp. 150 (S.D.N.Y.1967).

Third, defendant requests that the Government state whether each item of gross income sought in his second request was reported in his returns, and, if so, the amounts reported. As indicated below, the Government has consented to furnish defendant with copies of his returns for the years 1961–1965. In conjunction with the information to be supplied pursuant to defendant's second request, these will enable him to calculate for himself as much of the requested figures as is necessary.

■ Fourth, defendant requests that with respect to each count the Government state, in detail, how the amount of taxable income alleged in each was arrived at. The Government has already consented, in response to the second request, to supply breakdown figures of the defendant's alleged taxable income for the relevant years. It resists, quite properly, furnishing any further details of the precise manner in which these figures were arrived at. Such details would come very close to granting defendant inspection of the Government's file in the case, and would go beyond legitimate particularization to discovery of the Government's evidence.

■ Finally, defendant requests that with respect to each count, if the amount of personal or business deductions allowed in arriving at the figures alleged in the indictment differs in any respect from that claimed by defendant on the returns filed by him, the Government set forth such differences, showing the deductions claimed and allowed and stating the reasons for the differences. Since the information which the Government has furnished and agreed to furnish in response to this request is more

than adequate to enable defendant to prepare for trial, the request is denied except to the extent consented to.

 Defendant's motion for permission to inspect and copy his tax returns for each of the years in which he is charged with understating income is consented to by the Government. The Government further agrees to furnish transcripts of any recordings of statements made by defendant and copies of any statements made, signed and acknowledged by him. Any further disclosure, such as information obtained from defendant and incorporated in Government reports, is properly resisted on the grounds that defendant has failed to allege any particular need for it. As we held in United States v. Carreau, 42 F.R.D. 408 (S.D.N.Y.1967), the Government is not required to disclose any and all statements to the defendant upon his simple request, absent a showing of good cause. No such showing having been made here, the defendant's motion is denied except as consented to.

The motion is disposed of as indicated above.

It is so ordered.